Ruger, Ch. J.
 

 This action was brought, in the name of the-People, by the attorney general, to determine the corporate existence of the defendant, upon the alleged ground that it had forfeited its charter through a failure to build a portion of the railroad track which its predecessor was authorized to construct The Rondout & Oswego Railroad Company was organized in 1866,. under the general railroad -act, to build, operate and maintain a railroad from Rondout, in Ulster county, to the village of Oneonta, in the county of Otsego; and during the period of its existence actually built a road from Rondout to Stamford; but failed to build that portion extending from Stamford to Oneonta. The defendant, the Ulster & Delaware Railroad Company, through a plan of reorganization adopted by the bondholders, under chapter 430 of the Laws of 1874, on the sale of the property of the railroad under a mortgage foreclosure in 1875, succeeded to the rights, property and franchises of the original company. It was for the failure of the defendant to complete the railroad originally
 
 *281
 
 projected by the Bondout
 
 &
 
 Oswego Company that this action was brought
 

 The action is claimed to have been authorized by the provisions of § 1798 of the Code of Civil Procedure, providing that an action may, by leave of court, be brought by the attorney general to procure a judgment annulling the existence of a corporation created under the laws of this state, when, among other things, it “ has violated any provision of law whereby it has forfeited its charter, or become liable to be dissolved, by the abuse of its powers ; or forfeited its privileges or franchises by a failure to exercise its powers.” .
 

 A violation of the provisions of this section apparently creates a cause of forfeiture and contemplates a punishment to be inflicted upon the offender, and not a benefit to be recovered by the prosecutor. Eo absolute right to enforce a forfeiture for the causes specified is conferred upon any party; but it is made to depend upon certain conditions. The statute does not execute itself; but requires the action of the attorney general to make it effective. Even the willful neglect of a railroad corporation to exercise all its franchises does not, of itself, terminate its corporate existence; but, to effect that result, the state, through its attorney general, must not only elect to enforce the forfeitures, but also procure leave from the court to bring an action for that purpose. Section 1798, Code Civ. Pro.;
 
 People
 
 v.
 
 A. & V. R. R. Co.,
 
 24 N. Y., 261;
 
 People
 
 v.
 
 Sugar Refining Co.,
 
 121 id., 582 ; 31 N. Y. State Rep., 781.
 

 Such actions are not even then maintainable, except some public interest is involved, which requires the exercise of the franchise by the corporation.
 
 People
 
 v.
 
 Sugar Refining Co., supra.
 

 It was, therefore, incumbent upon the state to show upon the trial of the action that a cause of forfeiture had not only been incurred by the defendant, but that it continued to exist and that its existence involved some public interest, and also that the court had authorized the bringing of the action. An action thus commenced is, even then, necessarily, always within the control of the state, as the sole party interested, to prosecute or abandon at its mere will and pleasure.
 
 People
 
 v.
 
 Phænix Bank,
 
 24 Wend., 431. It is responsible to no one for the exercise of its discretion in this respect, and can, through the action of its legislature, not only discontinue an action brought by it, but can also repeal or confirm charters, waive or abolish causes of forfeiture, release rights of action, and limit the operation of its statutes upon individuals and corporations at its own will By enforcing the forfeiture of corporate existence the state receives no benefit and acquires no property, and by waiving such forfeiture it loses no privilege and interferes with no vested right. Having the absolute power, at will, to take the corporate life, it does not hamper its freedom of action by forbidding its servants, in specified cases, from prosecuting actions for forfeiture. It requires no exercise of judicial power to enable it to waive a forfeiture; but it may be effectuated by the mere expression of its will, and its will may be based '
 

 '
 
 *282
 
 upon cause or utterly without one. Having absolute power, as the supreme representative of the People in respect to the question, it may do so with or without cause, or upon whatever terms or conditions it may see fit to impose.
 

 It is claimed by the defendant that the state, by the enactment of chapter 286 of the Laws of 1889, amending chapter 480 of the Laws of 1874, has so changed the original statute that a reorganized railroad corporation no longer incurs the risk of forfeiting its charter when the railroad commissioners certify that no public interest is involved in the completion of a road as originally projected. The act is as follows: “Nothing herein contained shall be construed to compel a corporation, organized under this act, to
 
 extend its road
 
 beyond the portion thereof constructed at the time said corporation acquired title to such railroad property and franchise, provided the board of railroad commissioners shall certify that, in their opinion, the public interests, under all the circumstances, do not require such extension. If said board shall so certify, and shall file in their office such certificate, * * * said corporation shall not be deemed to have incurred any obligation to so extend its road, and such certificate shall be a bar to any proceedings to compel it to make such extension, or to annul its existence for failure so to do, and shall be final and conclusive in all courts and proceedings whatever.”
 

 By this enactment the state has indicated in the most imperative form its will in respect to such actions. It thereby declared that the certificate of the railroad commissioners to the effect that no public interests were involved, should thereafter be a conclusive answer to any attempt to annul the existence of a reorganized railroad corporation for a failure to make an extension of its road. By this act the state devolved upon the railroad commissioners the duty, previously performed by its attorney-general, of inquiring whether the public interests required it to enforce an alleged forfeiture against a reorganized railroad corporation, and necessarily thereby deprived other departments of the government of the power of determining the preliminary question upon which the' action of the state in instituting and prosecuting such actions must be founded.
 

 By leaving to another department of the state the determination of a question upon which its own action was thereafter to be controlled, it neither delegated legislative power to, or conferred judicial functions upon such department. It simply instituted an
 
 ex parte
 
 inquiry to determine its own future action, as had been the uniform practice of the state government for many previous years. The question whether the public interests are involved is always a condition precedent to the right of maintaining any action by the attorney-general for the forfeiture of corporate rights, and the state, by this act, says that it will hereafter leave this question, in cei’tain cases, to the railroad commissioners to determine, instead of to the attorney-general, by whom it had theretofore been decided. In other words, it has made the railroad commissioners’ certificate conclusive evidence of the non-existence of any sufficient ground of forfeiture. After the filing of such certificate,
 
 *283
 
 the law prescribing a forfeiture of its charter by a reorganized railroad company, for an omission to build an extension of its road, ceases to operate thereon and practically abolishes the penalty which the act of 1874 imposed in certain cases. This does not give to the act a retroactive operation; but, there being no clause in the act of 1889 saving ' pending prosecutions or existing rights from the effect of the statute, by settled rules, the abolition of the penalties left all actions in which judgments had not been obtained subject to the rule created by the amended statute alone.
 
 Nash
 
 v.
 
 White's Bank of Buffalo,
 
 105 N. Y., 243; 8 N. Y. State Rep., 31.
 

 We are of the opinion, therefore, that the certificate of the railroad commissioners, filed under the act of 1889, to the effect that no public interest required the extension of the defendant’s railroad, was a bar to this action.
 

 We are also of the opinion that the order denying the motion for an extra allowance was correctly determined. By § 3253 of the Code of Civil Procedure the court is authorized, in difficult and extraordinary cases, where a defense has been interposed, to award to any party a sum not exceeding five per centum upon the sum recovered, or claimed, or the value of the subject-matter involved. It is conceded that the matter involved in the action was the existence of the defendant’s corporate franchise, and that alone, and a claim for an extra allowance must, therefore, be predicated upon the value of the franchise. The trial court awarded an allowance of $15,000 to the defendant and must, therefore, have determined that the corporate franchise was, at least, of the value of $30,000. The undisputed evidence showed that the' corporation paid no dividends on its stock and no interest on its debts, and that its gross earnings were insufficient to pay its operating expenses in the year 1889.
 

 This evidence certainly did not show affirmatively that the corporate franchise had any definite value. It is, however, claimed that because the state imposed a tax upon “ the corporate franchise and business ” of the company under chapter 361 of the Laws of 1881, some evidence was furnished by the state of the value of the franchise. We are of the opinion that this tax furnished no evidence of the fact upon which a claim to an additional allowance can be based. The act pro /ides that in the case of non-dividend paying railroads, a tax shall be imposed upon their corporate franchise and business at the rate of “ one and one-half mills upon each dollar of a valuation of the capital stock.” This value is usually estimated by the comptroller from data furnished by the officers of the company, and in the year 1889, upon a capital stock of $1,152,100, was estimated to be of the value of $41,602.50, yielding a tax of about sixty dollars per annum. It is thus apparent that the sum assessed under this provision is an arbitrary amount, based upon the amount of its capital stock, without reference to the value of its franchise. A tax upon the corporate franchise and business of a railroad is also authorized, by the same act, to be computed upon its gross earnings at the
 
 *284
 
 rate of five-tenths of one per cent upon each dollar of such earnings.
 

 It will thus be seen that both these taxes are imposed arbitrarily, upon certain data having no reference to the actual value of the franchise, and therefore furnish no evidence of such value. While the act of 1889 apparently assumes that the franchises and business of all railroads, subject to taxation, are of some value, it would be quite erroneous to make so vague and indefinite an assumption the basis of a judicial inquiry as to the actual value of a railroad franchise.
 

 The judgment and order-appealed from should both be affirmed, with costs.
 

 All concur, except FltrOH, J., absent.