# CASES DETERMINED

# August Term, 1901.

CHICAGO & NORTHWESTERN RAILWAY COMPANY, Respondent, vs. MOREHOUSE and another, Appellants.

*October 16 — November 5, 1901.*

*Railroads: Eminent domain: Public use: Spur-track to single industry.*

1. The declaration of the legislature that a particular use is public, so far as concerns the taking of private property therefor, is binding upon the courts unless so manifestly wrong as not to admit of a reasonable doubt on the question.

2. Sec. 1831a, Stats. 1898 (authorizing railway companies to condemn land for branches and spur tracks to "any mill, elevator, storehouse . . . or other industry or enterprise"), is valid, and the taking of land for such a purpose is a taking for a "public use," even though the spur track to be constructed will run to a single industry (in this case the ice houses of a single owner), if the purpose of the company is to maintain and operate such track as a part of its railway system and all persons will have the right to be served thereby without discrimination; and where such is in good faith the purpose of the company, it is immaterial that it has been induced to undertake the establishment of the spur track by the promise of the proprietors of the single industry to furnish a large amount of business and to bear a large part of the expense.

APPEAL from an order of the circuit court for Washington county: JAMES J. DICK, Circuit Judge. *Affirmed.*

Plaintiff filed a petition in the circuit court for said county, stating, in substance, that it is a railway corporation entitled to the benefit of the statutes of this state for the acquire-

ment by such corporations of real estate necessary for their use, by the exercise of the power of eminent domain; and further stating all the facts required by law to entitle it to take certain real estate described and to have commissioners appointed to appraise the same and determine the compensation to be paid to the owners thereof, if the particular use to which the petitioner purposed devoting the land was public so that constitutional authority existed for the exercise of the power of eminent domain by the corporation to acquire it. The facts in regard to such particular use, as stated in the petition, are as follows: In the vicinity of Wallace Lake, a body of water distant about one mile and a quarter from petitioner's main line, are located important ice industries, and other like industries are in prospect. Great quantities of ice are annually taken from such lake and shipped to various points on petitioner's railroad. A spur track, reaching from petitioner's main line to the ice houses on the bank of the lake, is necessary to the maintenance of such industries, in order that the ice can be economically transferred from the bank of the lake and the ice houses there situate to and over the main line of petitioner's railroad.

. Two of the persons named in the petition as owners of or interested in a portion of the land therein described, answered, alleging that the proceedings were instituted and carried on at the request and expense and for the benefit of the Pike & North Lakes Ice Company, a private corporation; that the land was not necessary for the purpose of operating petitioner's road.

On the hearing evidence was produced to the following effect: The petitioner is a railway corporation as alleged. A large and important part of its business as a public carrier of freight is the transportation of ice from sources of supply to various points on the lines of its railway system. Its main line passes the vicinity of the place sought to be

reached by the proposed spur track, within about one mile thereof. The usual way of handling ice from sources of supply, over railway systems, is by constructing spur tracks from the main lines to such sources at the expense, in the main, of the proprietors of the ice industries. In such cases the railway companies own the spur tracks and operate them as part of their systems and in the same manner. The petitioner owns several such spur tracks. The proposed spur track is to be something over one mile long. There is a station on the main line of the petitioner's railroad a little over a mile from the terminus of the proposed track, but it would be impossible to profitably conduct the ice industry to be served by such spur track other than by the use thereof. The general freight business of the petitioner in the vicinity of the ice industry is accommodated at the railway station referred to. It is proposed to construct such spur track at the expense of the Pike & North Lakes Ice Company, except the expense of ties and rails and placing the same in position. The ice company has procured the right of way for the use of the petitioner, except that portion in controversy in this proceeding. It is customary, in operating such spur tracks, to receive and carry freight over the same from any person who may desire such service. Such tracks are usually constructed at the request, and in the main at the expense, of the owner of the particular industry established or to be established, and upon a guaranty or assurance of sufficient business to warrant maintaining and operating the track; but they are operated without discrimination as to all persons desiring service by them. Such is the inducement to the petitioner to enter upon the construction of the spur track in question, and its purpose. Such spur track will reach four lakes, but the immediate purpose of it is to reach two lakes as sources of supply of ice. The only concern to be immediately served by such spur track, as a shipper of ice from the source of ice supply, is the Pike & North

Lakes Ice Company, it being the proprietor of an ice indus-
try, established or in immediate prospect, that will need the
use of such track.   The track will be at the disposal, as part
of the petitioner's system, of other proprietors of ice indus-
tries, should any such be established at the terminus of the
track or other points that can be reached by it.   There is
no highway or other public way, at present, reaching to the
vicinity of the proposed track.   No one can reach such ter-
minus without passing over private property.   The only
purpose of such spur track is to furnish the Pike & North
Lakes Ice Company, and such others as may desire to use
it, with facilities for transporting ice over the petitioner's
railroad to consumers at points reached by such road.

The court found, among other things, that there were
located and to be located important ice industries, intended
to be reached by the proposed spur track to be constructed
over the land described in the petition as therein alleged;
that the real estate which the petitioner desired to take was
necessary for the purpose of operating its road and con-
structing and operating the spur track; that the use to which
petitioner purposed devoting the land was public, and that
it had a right to acquire the same by exercising the power
of eminent domain.   Commissioners were appointed accord-
ingly, to appraise the land and determine the compensation
to which the owners thereof were entitled by reason of being
deprived of the same against their will for the use of peti-
tioner.   The answering landowners appealed.

For the appellants there was a brief by *Timlin, Glicksman
& Conway*, and oral argument by *Nathan Glicksman*. They
contended, *inter alia*, that it is not enough to render the use
public that the public retain certain definite rights to the
use and enjoyment of the property, unless such rights are
secured to the public by reasonable opportunity for their
exercise.   A mere declaration on the part of the railroad
company that it will carry a car-load of freight over this

spur track for any one desiring to ship the same will not make the track subserve a public use, unless it is so situated and built as to secure to the public facilities for the exercise of such right.    If the construction of the track is such as to limit its use to the shipper owning the land at its terminus, the right to the use or enjoyment of this track by the public is not secured, and the use is merely a private one.    If the use offered to the public is subject to such limitations as to deprive it of its public character and of all beneficial enjoyment, it will be held to be a private use and condemnation will not be permitted.    *Matter of Niagara Falls & W. R. Co.* 108 N. Y. 375; *Apex T. Co. v. Garbade,* 32 Oreg. 582; *Matter of Split Rock C. R. Co.* 128 N. Y. 408; *Wisconsin W. Co. v. Winans,* 85 Wis. 26; *Salt Co. v. Brown,* 7 W. Va. 191; Lewis, Em. Dom. (2d ed.), § 171; *Railroad Co. v. Iron Works,* 31 W. Va. 710.    If the condemnation here sought should be permitted and the spur track here projected should be actually built and used as the petition and undisputed evidence show it is intended it should be, its use would be condemned as a private one.    *State v. Railway Co.* 40 Ohio St. 504; *People ex rel. Robinson v. Pittsburgh R. Co.* 53 Cal. 694; *Rensselaer & S. R. Co. v. Davis,* 43 N. Y. 137, 146; *Railway Co. v. Petty,* 57 Ark. 359.

*Edward M. Hyzer,* for the respondent.

MARSHALL, J.    Sec. 1831*a,* Stats. 1898, provides that, "every railway company existing in whole or in part under any law of this state and operating a railway therein may build, maintain and operate branches and spur tracks from its road or any branch thereof to and upon the grounds of any mill, elevator, storehouse, warehouse, dock, wharf, pier, manufacturing establishment, lumber yard, coal dock or other industry or enterprise . . . ; and may acquire by purchase or condemnation, in the manner provided in this chapter for the acquisition of real estate for railway

purposes, other than for its main track, all necessary road-
ways and rights of way for such branches, spur tracks,"
etc.   Respondent, claiming the benefit of such statute, in-
stituted the proceeding here involved.   There is no ques-
tion but that it was and is entitled to such benefit if the
establishment and operation of a spur track to an ice indus-
try, for the transportation of ice from such industry to con-
sumers thereof, are within the statute, and that is a public
use within the meaning of the constitutional limitation
upon the power of the state to take private property there-
for.   There is no controversy but that respondent satisfies
all the requirements of a grantee of the right to exercise
the power of eminent domain under the statute, and that
the gathering, storing, and shipping of ice satisfies the calls
of the statute for an industry to be reached by a spur track,
and that the law contemplates only branch tracks leading
off from main railway tracks, such branch tracks to be con-
structed and operated as a part of an entire railway system
for the transportation of freight to and from particular
points reached thereby.

Appellants' counsel contend, in effect, that if the statute,
by its terms, authorizes the taking of private property for
right of way for a spur track to a particular industry, for
the sole use of the proprietors thereof and of the railway
corporation, it is unconstitutional, and that such was the
end sought by respondent.   On the case made by the find-
ings of fact upon which the decision appealed from rests,
we do not need to discuss that proposition.   We apprehend
that if the facts underlying it were understood to be as
stated in the hypothesis, circumstances would not have arisen
rendering this appeal necessary or possible.   In any event,
if the judgment under such circumstances were against ap-
pellants, they would have, in support of a reversal, abun-
dance of authority.  The trial court concluded from the evi-
dence that the end respondent had in view in seeking to

acquire the real estate in controversy was to construct a spur track to the seat of an important ice industry for the purpose of facilitating the transportation of ice therefrom, and from any other such industry that might be established within reach of the proposed track, to various points in various states; that in the operation of the existing ice industry great quantities of ice would be handled from the source of supply to consumers reached by petitioner's railway system; that railway facilities, such as the proposed spur track was designed to furnish, were necessary to the successful operation of such an industry, and to the convenience of the petitioner in the public business of furnishing shipping facilities for the handling of ice; and that the petitioner invoked the statutory power given to railroads to acquire rights of way for spur tracks in good faith intending to devote the property, when acquired, to the public use declared by the statute. In this we state the effect of the findings of fact upon which the conclusion of the circuit court rests. We are unable to come to the conclusion that the evidence upon which they were found clearly preponderates against them. True, the evidence shows that the proprietors of a single ice industry, by promising to furnish a large amount of ice for transportation over the petitioner's road, and to bear a large part of the expense of establishing the spur track, influenced respondent to undertake such establishment; but it also shows, or tends to show, that respondent intended to make the track a part of its railway system, to control it exclusively, and operate it the same as it operates any other part of such system, acknowledging the right of all persons to be served by the facility for handling ice thus afforded, without discrimination.

In the case upon which counsel for appellants seem to rely, in the main, to demonstrate that the order appealed from is wrong (*Railroad Co. v. Iron Works*, 31 W. Va. 710), the decision was based on a far different situation, in the

judgment of the court, than that with which we have now
to deal.    The court there said:

"Through the disguises thrown around the case of the
petitioner the only purpose discoverable, other than the
private gain of the petitioner, is the private gain of the own-
ers of the particular industry whose place of business the
petitioner intended to reach by the spur track."

We are not entirely satisfied that such conclusion was
justified by the record, as disclosed by the opinion, or the
cases cited in support of it, but we will not take time or
space here to go into that question.    The case is of little or
no weight in solving the proposition now presented, it ap-
pearing here that the purpose of respondent was to con-
struct and operate a spur track reaching from a main rail-
way track to a large industry, such spur track to form an
integral part of its railway system and to be operated so as
to facilitate the transportation of ice for all persons desir-
ing such service, without discrimination.

A still broader claim is made by appellants' counsel than
the one above discussed,— one that may be said to face as
verities the conclusions of fact upon which the trial court
rested its decision,— namely, that the taking of land for
right of way for a spur track reaching to a particular in-
dustry, regardless of the nature of the business and the num-
ber of persons indirectly interested in its maintenance, is
not a taking for public use within the meaning of the consti-
tution, and that the legislative authorization of such a taking
is void.    In support of that, the question of what consti-
tutes public use justifying the exercise of sovereign author-
ity to lay hold of private property to promote it, is discussed
by counsel for appellants at considerable length.    As has
often been said, the constitution itself furnishes no guide
for determining what is and what is not a public use.    The
dividing line between the two has not been easy to discover.
That is evident from the fact that courts have been slow to

define it with sufficient distinctness to prevent a conflict of authority. However, some general principles have been established by a long line of decisions, which, in principle and weight, do not reasonably permit of being questioned by reference to the expressions of courts here and there not in perfect harmony therewith; which principles enable courts, where they are recognized, to measure, with reasonable accuracy, most of the situations where it is sought to take private property by the exercise of the sovereign authority, for an alleged public use, and to determine whether, in the real purpose to be effected, such property will have the impress of public use and will be actually devoted thereto. A principle of the first importance is this: Where the constitution, as in this state, does not reserve to the courts, as an original question, the determination of whether a particular use shall be deemed public, the primary inquiry in that regard is for the legislature; and its judgment, when expressed, is deemed to be beyond question by any judicial tribunal if there is any reasonable ground to support it. That is to say, as applied to the case in hand, the legislature having, in effect, declared that the taking of private property for a spur track reaching a particular industry is a taking of private property for public use within the meaning of the constitution, unless it appears that such declaration is so manifestly wrong as not to admit of a reasonable doubt on the question, it must be adopted by the courts. The real question involved is whether the legislative declaration is constitutional or not, and the rule as to such situations must control. *Bankhead v. Brown*, 25 Iowa, 540; *Hazen v. Essex Co.* 12 Cush. 477. In the last case cited Chief Justice SHAW, speaking for the court, said:

"If a public use is declared [by the legislature], it will be so held, unless it manifestly appears by the provisions of the act that they can have no tendency to advance and promote such public use."

What constitutes public use in the abstract was judicially determined by this court, at quite an early day, in harmony ·with the decisions of other courts theretofore rendered and the decisions of most courts that followed.  In *Whiting v. S. & F. du L. R. Co.* 25 Wis. 167, it was said that the public use which justified the application of the doctrine of eminent domain, in the case of railroads owned and operated by private individuals, consists solely in the fact that the owners cannot, without reasonable excuse, refuse to receive and transport passengers and freight when offered, at reasonable rates, and that the state retains the power to regulate and control the franchise and limit the amount of toll which it shall be allowable for the owners to charge. That declaration manifestly presupposes that the business of carrying freight and passengers is one which the legislature may properly recognize as of public concern, and that the public agency, seeking to take private property ostensibly for public use, actually intends to devote it to such use.   That has stood as the law of this state for upward of a quarter of a century.  It is too late to question it now, even if, as an original proposition, it would be open to criticism, which does not seem to be the case.

It does not appear clearly that counsel for appellants challenged the general doctrine above stated, but rely upon the claim that the legislature went too far in recognizing the convenience of spur tracks to railroads and their patrons in transporting freight to and from a particular industry as a matter of public concern; and that the court below was not justified by the evidence in finding the question of good faith in respondent's favor.  As before indicated, we can see no warrant for disturbing the decision complained of on the last subject mentioned.  That is purely matter of fact, and we cannot say that the evidence clearly preponderates against the decision.  Whether the legislature was warranted in declaring the particular use in question to be public is the

most serious question involved. Keeping in mind the fact that the inquiry as to that only extends to discovering whether there was reasonable ground for the legislative recognition of the facility of a spur track as a convenience or necessity for the transportation of freight to and from a single industry, as a matter of public concern falling within the term "public use," there is no great difficulty in arriving at a conclusion.

It seems that the weight of judicial authority, and the better reasoning, are in favor of the legislation in question. A brief reference to some of the leading authorities will amply show that the fact that a spur track may run to a single industry does not militate against the devotion of the property thereto being a public use thereof, so long as the purpose of maintaining the track is to serve all persons who may desire it, and all can demand, as a right, to be served, without discrimination. In *De Camp v. Hibernia U. R. Co.* 47 N. J. Law, 43, a leading case, the court said:

"This enterprise does not lose the character of a public use because of the fact that the projected railroad is not a thoroughfare and that its use may be limited by circumstances to a comparatively small part of the public. Every one of the public having occasion to send materials, implements, or machinery for mining purposes into or to obtain ores from the several mining tracks adjacent to the location of this road, may use this railroad for that purpose, and of right may require the company to serve him in that respect; and that is the test which determines whether the use is public."

However, the court said that where the franchise is in its nature public, like the transportation of freight, and the industry permitted is one that concerns the public, and all who desire to be served by the enterprise can demand service on equal terms, the number who can take advantage of the convenience is not material. In *Contra Costa C. M. R. Co. v. Moss,* 23 Cal. 323, it was held that what constitutes a public use is a matter resting in the sound discretion of

the legislature, and that its will must prevail unless it is guilty of a manifest abuse of power; that the imposition on a railroad company by law of the duty to act as a common carrier, where the primary purpose of the company in building its road is to develop an industry in which the public is interested, renders the use of the property of the railroad public and justifies the legislature in granting it the right to resort to sovereign authority so far as necessary to acquire from private parties the property necessary to its enterprise. *Chicago, B. & N. R. Co. v. Porter*, 43 Minn. 527, involved every question discussed in this case. The petitioner sought to acquire private property for the purpose of establishing and operating a spur track to a single lumber industry. The evidence showed that the track was to be a part of the petitioner's railway system, was to be used to transport freight to and from the industry at the terminus thereof, and that the principal if not the only freight expected was that to be furnished by the proprietors of such industry directly or indirectly; but that the road was to be open to all persons who might desire such service over it. The right of the petitioner to acquire the land for its right of way was sustained, the court saying:

"The character of the use, in the case of a railroad or railroad track, does not depend on the amount of business or the number of persons who may have occasion to use it, but on the right of the public to the benefit of it. If all the people have a right to the use of it, it is a public use or interest, though the number who require its use may be small. There is nothing to show that the proprietors of the particular industry are to have any control over or management of the track in question, or to have any right in it other than that of any person or corporation having business establishments along or near it, to wit, the right to ship and receive freight upon it carried or to be carried over plaintiff's lines."

The cases which hold to that doctrine are too numerous to warrant making any attempt to cite all of them. The

following are but a small part thereof. *Dietrich v. Murdock*, 42 Mo. 279; *Brown v. Corey*, 43 Pa. St. 495; *Boyd v. Negley*, 40 Pa. St. 377; *Waddell's Appeal*, 84 Pa. St. 90; *North Central C. Co. v. George's Creek C. & I. Co.* 37 Md. 537; *Phillips v. Watson*, 63 Iowa, 28; *Lower v. C., B. & Q. R. Co.* 59 Iowa, 563; *National Docks R. Co. v. Central R. Co.* 32 N. J. Eq. 755; *Ex parte Bacot*, 36 S. C. 125; *Railway Co. v. Petty*, 57 Ark. 359; *Bridal Veil L. Co. v. Johnson*, 30 Oreg. 205; *Butte, A. & P. R. Co. v. Montana U. R. Co.* 16 Mont. 504. See, also, Lewis, Eminent Domain, § 171; Mills, Eminent Domain, § 14; Randolph, Eminent Domain, § 54.

Those authorities would have supported a different conclusion in *Railroad Co. v. Iron Works*, 31 W. Va. 710, than that reached by the court. That case really seems out of harmony with the current of authority, unless it is viewed in the light of the conclusion reached by the court that the attempt to take private property, though ostensibly for public use, was really for the exclusive use of the proprietors of a particular industry; that is to say, that it was not the purpose of the railway company, in taking the property, to give to all persons desiring to be served by it equal privileges. The court may be said to have determined the question of good faith against the petitioner, and on that based its decision. Here, as before indicated, that question was found in favor of the petitioner, and no good ground is discovered for disturbing that conclusion.

From the foregoing it will be seen that whether a particular use of property may reasonably be declared public has been solved uniformly according to circumstances. That the agency seeking to take the property by legislative authority is essentially a quasi-public agency, as a railway corporation, has a very important bearing on the question, and likewise has the importance of the particular industry to be promoted; and the two together have generally been deemed controlling. Where the mining of coal is an im-

portant industry, it is held that the legislature may legiti-
mately say that the taking of property for a railroad,
indispensable, or reasonably necessary, to the successful
operation of a particular coal mine, is a taking of property
for public use. Where lumber industries are important fac-
tors in the employment and enrichment of the people, the
taking of private property for a railroad for the conven-
ience, in the main, of the proprietors and patrons of an in-
dustry of that kind, is deemed a taking of private property
for public use. Where the fertilization of arid lands is
deemed material to the development of the country, it is
held to be within legislative discretion to declare the taking
of private property for irrigating canals a taking of such
property for public use. In the early settlement of the
country the importance to the general welfare of establish-
ing and maintaining gristmills was such that it was held
that the use of the land covered by back water from the
milldams was a public use thereof within the meaning of
the constitution. The instances are very few where a grant
of power to a recognized public agency, such as a railroad
corporation, to exercise the power of eminent domain to ac-
quire private property for its right of way, either for its
main track or for its side tracks or spur tracks to be oper-
ated as a part of its railway system, the right to declare
what shall be deemed a public use being vested primarily
in the legislature, has been condemned by the courts. We
cannot discover any good reason for condemning the legis-
lative action in question in this case, and therefore must
affirm the order appealed from.

*By the Court.*— The order appealed from is affirmed.