WALLMAN, Appellant, vs. R. CONNOR COMPANY, Respondent.

*October 22—November 28, 1902.*

*Highways: Temporary logging roads: Eminent domain: Public or private use?*

Sec. 1299*i*, Stats. 1898, providing that town supervisors may exercise the power of eminent domain in laying out temporary logging highways, and that such highways shall be public, authorizes and can authorize only the laying out of public roads. It gives no authority, therefore, to take for such purpose a strip of land lying wholly within the lines of private ownership and inaccessible to the public, even though the petitioners for the highway are operating over such strip, without the owner's consent, a private logging railroad which, under private leases and grants, runs also over the lands intervening between such strip and public highways; and the fact that the owners of the railroad have carried passengers and freight for others over their road is immaterial, they not being common carriers.

APPEAL from a judgment of the circuit court for Marathon county: W. C. SILVERTHORN, Circuit Judge. *Reversed.*

This is an action of ejectment to recover a four-rod strip of land running across one forty acres of land owned by the plaintiff and across one corner of the adjoining forty acres, also owned by the plaintiff. Upon this strip the defendant corporation had constructed, and was operating, a logging railroad against the consent of the appellant. The answer admits the plaintiff's title and right of possession when the action was commenced, but alleges that, after the action was commenced, due proceedings were taken, under sec. 1299*i*, Stats. 1898, by which the strip was duly condemned for a

temporary logging highway, and sets out the proceedings in full. This procedure was followed under the provisions of sec. 3074 of the statutes of Wisconsin. By stipulation the issues as to the validity and regularity of the condemnation proceedings and the validity of the statute under which the proceedings were had were first tried.

Upon the trial it appeared that the defendant is a logging and lumbering corporation, owning a large quantity of timber land in the town of Cleveland, which it desired to log, and also owning large sawmills and stavemills at the village of Stratford, on the Chicago & Northwestern Railway, about thirteen miles distant from the aforesaid timber lands. The defendant desired to build a logging railroad to transport logs from said lands to Stratford. It was not a physical impossibility to transport the logs to market by teams. There were ordinary public highways, which reached a part of the defendant's lands, but it would cost considerably more to get out the logs this way. The respondent secured either leases or grants of the right of way for the whole thirteen miles from all the landowners except the plaintiff, *Wallman,* and it proceeded and built its logging railroad over the whole distance, and across the plaintiff's land against his protest. Thereupon this action was brought, and after it was brought the respondent proceeded to condemn the four-rod strip over plaintiff's land alone, under sec. 1299*i,* Stats. 1898, and secured an order of condemnation from the supervisors, and tendered to plaintiff the damages awarded, which he refused to accept. The defendant operates the railroad in question as a logging railroad to get logs from said timber lands to its mills. It is equipped with cars and engines. There are no stations on the line, though there are stopping places, with platforms, for taking on freight. Passengers have been carried free, and some freight, belonging to others than the petitioners, has been transported in car-load shipments for pay. Small parcels of freight have been carried free. There is no

highway on either side of the plaintiff's land where the four-rod strip enters the adjoining lands. So far as the evidence shows, the leases and grants which the defendant has obtained from property owners to lay and operate its highway do not authorize the building or operation of a public railroad over the strip, or the use of the strip by the public in any manner.

The trial court concluded that sec. 1299*i* was a valid act, and that the defendant lawfully occupied the strip with its logging railroad, and the plaintiff appeals.

The cause was submitted for the appellant on the brief of *Bump, Marchetti & Bump,* and for the respondent on that of *Brown, Pradt & Genrich.*

WINSLOW, J. Sec. 1299*i*, Stats. 1898, under which the defendant obtains its right, if any it has, to maintain and operate its logging railroad over the plaintiff's lands, provides, in substance, that when two or more owners of timbered land present to the town supervisors a petition for the laying out of a temporary highway *to give them* access to said land, or therefrom to a stream or railroad, describing their lands and the lands over which they desire to lay the highway, the supervisors shall view the premises, determine the necessity of such highway for the purpose of removing the timber, and the length of time it will be required (at the end of which time it shall cease), and lay out the same in the manner public highways are laid out. After some further provisions, not necessary to be stated, the section provides that such highway *"shall be public;"* that the petitioners shall pay all damages awarded, and all expenses of laying the road; and that upon such payment the petitioners may enter upon, open, and work the same at their own expense, and "construct logging railroads" thereon. It is further provided that the petitioners shall be liable for damages resulting to persons or property on account of defects in the highway, and that such liability shall follow the ownership of the land "for the ben-

·efit of which the highway is laid," and the town shall not be liable on account thereof.

This statute is vigorously attacked by the appellant as un-·constitutional, because it is said it attempts to authorize the ·taking of private property for private use, thus falling under the condemnation of the rule announced in *Osborn v. Hart,* 24 Wis. 89. It is very evident from a mere reading of the sec-·tion that the primary object thereof is to make it possible for private owners to have a road opened over the property of ·other private owners to enable the first-named owners to get ·out their logs. The only thing in the section which savors ·of an intent to lay a public highway is the legislative state-ment that "such highway shall be public." As noted in *Chi-cago & N. W. R. Co. v. Morehouse,* 112 Wis. 1, 87 N. W. ·849, the constitution of this state does not define a public use, nor does it reserve to the courts alone the power to pass orig-inally upon the question whether a given use is public or pri-·vate; hence the legislature has the right to pass on the ques-·tion primarily, and its judgment that the use is public is bind-ing on the courts, if there is any reasonable ground to sup-port it; or, to put it in other language, unless it manifestly ·appears to the contrary by the provisions of the act. In the present law the legislature has declared that the highway to be laid out under it shall be a public highway. It must be public, or it cannot be laid out by eminent domain. To be ·public, it must not only be nominally open to use by the pub-lic, but it must be so located that the public can get onto it at some point. A strip of land lying entirely within the lines of private ownership, upon which the public cannot possibly ·enter without committing trespass on private property, can-not be held to be a public way. As said by Mr. Elliot in his ·work on Roads and Streets (2d ed.) § 192:

"The test is, not simply how many persons do actually use ·them? but how many have a free and unrestricted right in ·common to use them? for, if the public generally are ex-·cluded, the way must be regarded as a private one."

Assuming, therefore, for the purposes of this case, that which we do not decide, namely, that the law in question is constitutional, it can only be upon the theory that a road laid out under it is open to the use of any of the public who desire to use it. A road which is closed to the public at both ends and on both sides, and can only be lawfully used by the private parties who petition for it, is not such a road as is authorized to be laid out under this section, because it is not a public road; and the section only authorizes, and can only authorize, the laying out of a public road. The supposed road in question is just this kind of a road, so far as the proofs show. The rights of way and leases under which the respondents use and operate those parts of the road outside of the lines of the plaintiff's land are apparently mere private rights of use granted to the defendants alone. At least, it is not shown that the public has any rights in them at all. The strip which is supposed to have been condemned over the plaintiff's land is, therefore, absolutely inaccessible to the public, and is necessarily a mere private right of way. The fact that the respondents have carried some passengers over the railroad, and also some freight for others, cuts no figure. The respondents are not common carriers. They could not be compelled to carry a pound of freight or a single passenger. The proofs show that the supposed public way is purely a private one, and hence that it could not be legally laid out under the provisions of sec. 1299i.

*By the Court.*—Judgment reversed, and action remanded with directions to enter an interlocutory judgment for the plaintiff as indicated in this opinion, and for further proceedings according to law.

The respondent moved that the judgment of this court be modified by striking out that part which directs the entry of an interlocutory judgment for the plaintiff; and that the judgment of this court be so framed as to preserve any right

the respondent may have under the power of eminent domain.

The motion was denied January 13, 1903.