Union Lime Company and another, Appellants, vs. Railroad Commission of Wisconsin and another, Respondents.

*December 10, 1910—January 10, 1911.*

*Railroad Commission: Powers: Spur tracks: Constitutional law: Legislative power: Delegation: Eminent domain: Public use: Jurisdiction: Disputed title to land: Parties: Issues in action against Commission: Hearing before Commission: Reasonableness of order: Time for completion of track.*

1. Where the Railroad Commission, in a proceeding instituted under sec. 1797—11*m*, Stats. (Laws of 1909, ch. 481), to compel construction of a spur track, exercises powers derived from that statute, the constitutionality of the statute is involved, although it was not necessary to exercise all the powers conferred thereby.

2. The power conferred upon the Railroad Commission by sec. 1797—11m, to determine the existence of certain facts which must exist before a railroad company can be compelled under that statute to construct a spur track, is not legislative power and may be delegated to the Commission.

3. A spur track which, under sec. 1797—11m, a railroad company may be required to build, is not private, even though it serves a single industry the owners of which bear its initial cost, but becomes when built a part of the trackage of the railroad company, to be maintained and operated by it, open to the use of any one who may desire upon equal or equitable terms, and subject to state control under general laws; and hence land taken for the right of way of such a spur track is taken for a public, not for a private, use.

4. Sec. 1797—11m, providing for construction of a spur track whenever, among other things, its construction and operation "is not unreasonably harmful to public interest," does not contemplate that such a track may be built even though the sum total of its effect is somewhat harmful to public interest, but only when, as determined by the Railroad Commission, the public benefits so far outweigh any harm to public interest that the construction is advisable.

5. The authority of the Railroad Commission to act under sec. 1797—11m is not confined to cases wherein it must exercise all the powers delegated: it may exercise such of those powers as are necessary in the particular case, be they many or few. Thus, although no right of way need be acquired for a spur track, the Commission may proceed to discharge the other duties imposed upon it by the statute.

6. The Railroad Commission has no jurisdiction, in a proceeding to compel construction of a spur track, to pass upon a question of disputed title to land, even if all the proper parties are before it. That is purely a judicial question which must be determined by a court having jurisdiction thereof.

7. In an action against the Railroad Commission to set aside its order requiring construction of a spur track, it was error for the trial court to pass upon the validity of easements held by the railroad company, when such company was not a party to the action.

8. Even if the railroad company had been a party to such action the issue as to title to the right of way could not properly arise therein, being an issue between the company and other persons claiming the title.

9. An order of the Railroad Commission directing the construction

of a spur track, made without giving to any party interested therein or affected thereby an opportunity to be heard, must be set aside for that reason. A hearing previously given as to an entirely different route for the track, in which all parties participated, was not equivalent to a hearing as to the route finally selected.

10. An order of the Railroad Commission providing that a spur track should be constructed within thirty days did not give the railroad company a reasonable time, in view of the fact that condemnation of the right of way might be necessary.

BARNES and SIEBECKER, JJ., dissent.

'APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

The plaintiffs, *Union Lime Company* and *Nast Bros. Lime & Stone Company,* and the defendant *Eden Independent Lime & Stone Company* are the owners of parcels of land in section 6, town 14, range 18, in Fond du Lac county. The *Nast Company* owns the southeast quarter of the southeast quarter of said section and also the east two acres of the southwest quarter of the southeast quarter. The *Union Lime Company* owns the southwest quarter of the southeast quarter, except the east two acres thereof.. The *Eden Company* owns twenty-three acres, parcel of the southeast quarter of the southwest quarter of said section. The lands of the parties thus lie in a line east and west upon the south side of section 6.

The *Nast Company* and its predecessors in title have for thirty years past operated and still operate extensive lime-kilns and a stone-crushing plant upon its premises. For a similar time the *Union Company* and its predecessors in title have also operated and still operate upon its premises extensive lime-burning and stone-crushing plants. The *Eden Company* was organized in the spring of 1909 and has partially completed a single lime-kiln on its premises but has never conducted any business thereon. In 1880 a spur or side track was built by the Chicago & Northwestern Union Railroad Company, the predecessor of the Chicago & Northwestern Railway Company, extending from a point on its main

line about one mile north of Eden station in a southwesterly direction across the land of the *Nast Company* and for a distance by the course of the track of about seventy-five rods upon the premises of the *Union Company,* terminating at a point about 185 feet east of the west line of the *Union Company's* land. From time to time since 1880 branches or side tracks from this main spur have been built and all of these tracks have always been used exclusively for the purpose of affording switching facilities to the plants of the plaintiffs. The map accompanying this statement of facts (see p. 527) shows the tracks upon the land of the *Union Company* and the proposed extension of one of these tracks to and upon the land of the *Eden Company* asked for by the latter in the proceedings before the *Railroad Commission.* The premises of the *Nast Company* lie to the east of those shown upon the map and upon them are also numerous tracks.

In June, 1909, the *Eden Company,* being about to erect a lime-kiln, applied to the Chicago & Northwestern Railway Company for a side track connecting with one of the tracks upon the *Union Company's* property. The railway company claimed that its rights in the trackage serving the *Union Company* did not permit it to make any extension for the purpose of serving others without the consent of the *Union Company.* In August, 1909, the *Eden Company* filed a petition with the *Railroad Commission* praying for the extension of the track marked C on the map referred to, from the terminus thereof to the site of the *Eden Company's* lime-kiln, alleging that it was entitled to have such extension made under ch. 481, Laws of 1909 (sec. 1797—11m, Stats.). Thereupon notice of the filing of this petition fixing a date for the hearing thereon was served upon the railway company, but no notice was given to plaintiffs and they were unaware of the proceedings until the making of an order by the *Railroad Commission* therein. A hearing being had before the *Railroad Commission* on September 16, 1909, at which the rail-

way company made no opposition to the extension of the track prayed for, an order was entered by the *Commission* directing the building of the track as prayed along the line indicated upon the map.

Thereafter and on October 29, 1909, the plaintiffs filed with the *Railroad Commission* a petition asking that the aforesaid order be vacated and that they be given leave to intervene in the proceedings. This application being granted, plaintiffs filed an answer alleging that the extension of the track as directed in the previous order of the *Commission* would greatly injure their property and interfere with their business, and prayed that said order might be rescinded, and that if the *Commission* should require a spur track to be constructed the same be ordered built so as not to cause unnecessary and unreasonable damage to their property. A second hearing was had before the *Commission* on December 17, 1909, at which a considerable amount of testimony was taken and in the course of which the president of the *Eden Company* testified that his company was able and willing to pay the expense of constructing a track from some point on the main spur between the points marked X and Y on the map, thence between the track marked C and the *Union Company's* office building, to and upon the *Eden Company's* land. March 24, 1910, the *Railroad Commission* made an order directing the construction of a track upon the line last described, but not providing for payment by the *Eden Company* of the cost of such track. Upon the promulgation of this order the railway company called the attention of the *Railroad Commission* to the fact that no provision was made therein for the payment of cost of the track ordered and that the company had no right of way over the line proposed. No protest or objection was made by plaintiffs to the *Commission's* order of March 24th, and there was no further hearing or proceedings before the *Commission,* but on April 1, 1910, the *Commission,* without notice to any of the parties, made a third

order requiring the railway company to extend the track marked D upon the map to and along the kiln shed of the *Eden Company*. The order further provided that "thirty (30) days is deemed a reasonable period of time within which to comply with the provisions of this order."

On April 21, 1910, this action was commenced against the *Railroad Commission* to vacate and set aside the third and last order of the *Commission* and to enjoin the execution thereof. On the trial, May 23, 1910, the *Eden Company* asked leave to intervene and become a party defendant, which leave was granted over plaintiffs' objection. The trial court held that sec. 1797—11*m*, Stats. (Laws of 1909, ch. 481), confers upon the *Railroad Commission* power to compel construction of spur tracks to such industries as that proposed to be operated by the *Eden Company* and, as an incident, to compel the railway company to acquire the necessary right of way for such spur; that if the company has an easement across the property of the *Union Company* the order of the *Railroad Commission* does not necessitate the exercise of the power of eminent domain; that certain papers executed April 3, 1880, confer upon the railway company a right of way over the *Union Company's* land; that this right of way was not limited to the use of the quarries of the *Union Company;* that therefore the question whether sec. 1797—11*m,* Stats. (Laws of 1909, ch. 481), contravenes the state or federal constitution was not involved, and that the order of the *Railroad Commission* was lawful and not unreasonable. Judgment dismissing the complaint and for costs was entered June 7, 1910, from which this appeal is taken.

For the appellants there was a brief by *Lines, Spooner, Ellis & Quarles,* attorneys, and *Geo. Lines,* of counsel, and oral argument by *Geo. Lines.*

For the respondents there was a brief by the *Attorney General* and *Russell Jackson,* deputy attorney general, for the *Railroad Commission,* and *Ecke & Hughes,* attorneys for the

*Eden Independent Lime & Stone Company,* and oral argument by *Mr. O. H. Ecke* and *Mr. Jackson.*

VINJE, J.    The trial court expressly stated in its decision that it did not pass upon the constitutionality of sec. 1797—11*m*, Stats. (Laws of 1909, ch. 481), inasmuch as it held the railroad company had valid easements across the lands over which the spur track was to be built and hence it was not necessary for it to invoke the power of eminent domain granted by the statute.    Counsel for defendants suggest that this court may likewise dispose of the case without passing upon the constitutionality of said section.    It appears, however, that the proceedings were in terms instituted pursuant thereto and that the *Railroad Commission* acted under it. That being so, it is not perceived how its acts thereunder can be valid if the statute itself is unconstitutional.    Indeed, the trial court by its judgment dismissing the action sustained the validity of the proceedings and in effect held it constitutional.    The fact that the *Railroad Commission* was not required to exercise all the powers conferred upon it by the statute did not obviate the necessity of passing upon its constitutionality, since the powers it did exercise were derived therefrom.    So the case directly involved the constitutionality of sec. 1797—11*m*.    That section reads as follows:

"1. Every railroad shall acquire the necessary rights of way for, and shall construct, connect, maintain and operate a reasonably adequate and suitable spur track, whenever such spur track does not necessarily exceed two miles in length, is practically indispensable to the successful operation of any existing or proposed mill, elevator, storehouse, warehouse, dock, wharf, pier, manufacturing establishment, lumber yard, coal dock or other industry or enterprise, and its construction and operation is not unusually unsafe and dangerous, and is not unreasonably harmful to public interest.

"2. Such railroad may require the person or persons, firm, corporation or association primarily to be served thereby, to

pay the legitimate cost and expense of acquiring, by condemnation or purchase, the necessary rights of way for such spur track, and of constructing the same, as shall be determined in separate items by the commission, in which case the total estimated cost thereof shall be deposited with the railroad before the railroad shall be required to incur any expense whatever therefor; provided, however, that when any such person, firm, corporation or association, shall be required by the commission to deposit with the railroad, the total estimated cost, as herein provided, such person, firm, corporation or association, may offer or cause to be offered, a proposition in writing to such railroad, to construct such spur track, such proposition to be accompanied by a surety company bond, running to such railroad, and conditioned upon the construction of such spur track in a good and workmanlike manner, according to the plans and specifications provided by such railroad, and approved by the commission, and deposit with such railroad the estimated cost of the necessary right of way for such spur track; and whenever such proposition and security company bond shall be offered the person, firm, corporation or association primarily to be served thereby, shall not be required to deposit as herein provided, as the total estimated cost of such construction, an amount in excess of the estimated cost of the right of way, and the total amount stated in such written proposition.   Provided further that before the railroad shall be required to incur any expense whatever in the construction of said spur track, the person, firm, corporation or association primarily to be served thereby, shall give the railroad a bond to be approved by the commission as to form, amount and surety, securing the railroad against loss on account of any expense incurred beyond the amount so deposited with the railroad.

"3. Whenever such spur track is so connected with the main line, as herein provided, at the expense of the owner of such proposed or existing mill, elevator, storehouse, warehouse, dock, wharf, pier, manufacturing establishment, lumber yard, coal dock, or other industry or enterprise, and any person, firm, corporation, or association shall desire a connection with such spur track, application therefor shall be made to the commission, and such person, firm, corporation or association shall be required to pay to the person, firm, corpora-

tion or association that shall have paid or contributed to the primary cost and expense of acquiring the right of way for such original spur track, and of constructing the same, an equitable proportion thereof, to be determined by the commission, upon such application and notice, to the persons, firms, corporations or associations that have paid or contributed toward the original cost and expense of acquiring the right of way and constructing the same."

It will be observed from the first subdivision of the section that four facts must co-exist before a railroad can be compelled to acquire a right of way, construct, maintain, and operate a spur track, namely: (1) the spur track must not exceed two miles in length; (2) it must be practically indispensable to the successful operation of the existing or proposed plant, industry, or enterprise; (3) its construction and operation must not be unusually unsafe and dangerous; and (4) it must not be unreasonably harmful to public interest. The legislature has delegated to the *Railroad Commission* the power to determine whether or not these four facts co-exist. If the *Commission* finds that they do, then, upon the statute being complied with, the railroad is required to build the track, otherwise not. The exercise of such power by the *Railroad Commission* is not the exercise of legislative power and may therefore be delegated to it. *State ex rel. M., St. P. & S. S. M. R. Co. v. Railroad Commission,* 137 Wis. 80, 117 N. W. 846; *Wayman v. Southard,* 10 Wheat. 1; *State ex rel. Kenosha G. & E. Co. v. Kenosha E. R. Co.* 145 Wis. 337, 129 N. W. 600.

Plaintiffs challenge the constitutionality of the statute on the ground that the side tracks provided for are private, and that land taken for right of way for such side tracks is taken for a private and not for a public use, contrary to the provisions of sec. 13, art. I, of the constitution of this state, and contrary to the provisions of the XIVth amendment to the constitution of the United States. If it be conceded that the side tracks are private, then the objections raised by plaint-

iffs must be deemed well taken. But the case of *Chicago &*
*N. W. R. Co. v. Morehouse,* 112 Wis. 1, 87 N. W. 849, nega-
tives such a concession. It was there held that the taking of
land for a side track under sec. 1831a, Stats. (1898), was a
taking for a public use even though the side track ran to a
single industry and the owners thereof were to bear a large
part of the expense. That section authorized a railroad com-
pany, in its discretion, to acquire right of way by condemna-
tion for a spur track not exceeding five miles in length to any
industry therein mentioned, without any restrictions as to its
being practically indispensable to the successful operation
thereof, or unusually unsafe and dangerous, or unreasonably
harmful to public interest. If it was a valid exercise of leg-
islative power to authorize a railroad company, in its judg-
ment, to condemn a right of way for a spur track five miles in
length without any restrictions as to public safety or inter-
est, it must certainly be held to be so to authorize the *Railroad
Commission* to order a spur track two miles in length to be
built under the safeguards to public interests provided by
sec. 1797—11m, Stats. (Laws of 1909, ch. 481).

Such track when built becomes a portion of the trackage of
the railroad. The fact that its initial cost is borne by the
party primarily to be served, with provisions for subsequent
equitable division of such cost, does not make it a private
track nor change the nature of its use. Over it the products
of the industry find their way into the markets of the world,
and every consumer is directly interested in the lessened cost
of such products resulting from the building and operation
thereof. That these products are supplied by a single owner,
or by a limited number of owners, affects the extent and not
the nature of its use—the track is none the less a part of the
avenue through which the commodities reach the public.
Subject to the equitable division of initial cost, the track is
at the service of the public as much as any other, and it con-
stitutes an integral part of the railroad system. The duty

to maintain and operate it rests upon the railroad.    Except
that it is relieved of the initial cost of right of way and con-
struction, the track stands in the same relation to it that any
other portion of its track does.    The owner of the industry
obtains no interest in or control over it beyond that of being
served by it equally with any one else who may desire to use
it.    And this is the crucial test as to whether or not the track
is a private or public one.    If it is open to the use of any one
who may desire, upon equal or equitable terms, and is sub-
ject to state control under general laws, it is a public track,
irrespective of the degree of the probability of any one else
using it, or the extent of such use.    *Chicago & N. W. R. Co.
v. Morehouse,* 112 Wis. 1, 87 N. W. 849; *Ulmer v. Lime
Rock R. Co.* 98 Me. 579, 57 Atl. 1001.    That such tracks are
to be open to the use of the public generally is clearly evi-
denced by the statute, for it speaks of the industry *primarily*
to be served and makes provision for others securing the same
service by sharing in the initial cost, thus evincing a clear in-
tent to subject the track, upon equitable terms, to the use of
any one who may require it.    Its operation, too, is subject to
state control under general laws, and neither the railroad nor
the owner of the industry can in any respect interfere with
such control.    The reasons for holding the provisions of
sec. 1831*a,* Stats. (1898), constitutional apply more strongly
to the provisions of sec. 1797—11*m,* and they are so clearly
set forth in the case referred to that a more extended discus-
sion of the subject here is not deemed necessary.

Plaintiffs contend further that the statute is unconstitu-
tional because the last clause of subd. 1 contemplates that a
spur track may be built even though the sum total of its effect
is somewhat harmful to public interest.    We think no such
construction should be given to the clause.    Every railroad
track is in many ways harmful to public interest.    The oper-
ation of trains thereon results in frightening horses on public
highways; in accidents on railway crossings; in setting fire

to adjacent property; in creating smoke and noise, more or less of a nuisance in every village and city, as well as in marring the beauty of scenery through which it passes.   In these and other respects every railroad may be said to be harmful to the public interest.   The legislature, mindful of these facts, wisely conferred upon the *Railroad Commission* the right to determine when any or all of these or other facts were unreasonably harmful to the public interest, and provided that when in the judgment of the *Railroad Commission* they were so, the spur track should not be constructed.   In other words, the legislature left it to the *Railroad Commission* to determine when the public benefits so far outweighed any harm to public interest as to render it advisable to construct the spur track.   Certainly no just criticism can attach to provisions so considerate of public welfare.

It is also argued by the plaintiffs that the statute nowhere indicates an intent 'to confer upon the *Railroad Commission* the power to order the construction of a side track when it is not necessary to obtain a right of way therefor.   Hence, they claim, if the trial court correctly held that no right of way had to be acquired in this case, then the *Railroad Commission* had no authority to act, since it can do so only in cases when it is necessary to acquire a right of way.   This argument is evidently based upon the erroneous assumption that when the legislature has delegated several powers to the *Railroad Commission* it cannot act in any case relative thereto unless it exercises all the powers thus delegated.   The statute is not susceptible of such a construction.   The *Railroad Commission* may exercise only such powers as the statute requires in the particular case, be they many or few.   If no right of way has to be acquired, obviously the *Railroad Commission* has no duties to perform relative thereto or the cost thereof; but it can and should proceed to discharge the other duties imposed upon it by the statute.

The Chicago & Northwestern Railway Company was not a

party to this action and yet the trial court adjudicated upon the validity of certain easements held by it, and the *Railroad Commission* did likewise—the railway company, however, being a party to the proceedings before it. The statute re-quires that the *Railroad Commission* shall make a prelimi-nary estimate of the cost of the right of way and the cost of construction, and shall require the total amount of such esti-mate to be deposited by the person primarily to be served, un-less he shall deposit a bond for construction, in which case only the estimated cost of the right of way need be deposited. In either case, in addition thereto, a bond to indemnify the railroad against any expense above that estimated must be given. In order to determine the amount of such deposit a preliminary inquiry into the question of the title and value of the land to be acquired must be made. But the statute does not contemplate that the *Railroad Commission* should pass upon the question of title. If it orders the track to be built, it becomes the duty of the railroad to secure the right of way by purchase, condemnation, or otherwise, if a right of way must be secured. Such a duty may be imposed upon the rail-road. *Wis., M. & P. R. Co. v. Jacobson,* 179 U. S. 287, 45 Lawy. Ed. 194. Should the *Railroad Commission* be in doubt as to whether or not a right of way must be acquired, it can protect the railroad by requiring a sufficient bond to be given to indemnify it fully in case it has to be acquired. But it has no jurisdiction to pass upon a question of disputed title even if all the proper parties are before it. That is purely a judicial question and must be determined by a court having jurisdiction thereof; and the trial court, in the action to test the validity of the order of the *Railroad Commission,* should not, in the absence of the railway company, have passed upon the question of disputed title. Even if the railway company had been a party to that action the issue of title to the proposed right of way would have been an issue between the owner thereof or those claiming title thereto

and the railroad or the person primarily to be served; and, under the rule laid down in *Superior v. Douglas Co. Tel. Co.* 141 Wis. 363, 122 N. W. 1023, such issue could not be joined with the action against the *Railroad Commission.* The trial court, therefore, erroneously passed upon the validity of the easements held by the railroad and its judgment thereon must be set aside.

By reference to the accompanying map and statement of facts it will be seen that the *Eden Company* first petitioned for the extension of track C, and that after a hearing, of which the plaintiffs had no notice and in which they did not participate, the application was granted. Plaintiffs were then allowed to intervene, and, upon a hearing, the first order of the *Railroad Commission* was vacated, and a track beginning on the main spur between the points marked X and Y, thence between the track marked C and the *Union Company's* office building to and upon the petitioner's land, was ordered constructed. This order inadvertently failed to provide for the payment of the cost of such track by the petitioner, and the *Railroad Commission,* upon its attention being called to the fact by the railway company, vacated the order, and, without notice to any of the parties, made a third order requiring the railway company to extend track D to the kiln shed of the petitioner. The validity of this last order is in question. Plaintiffs earnestly contend that this court should declare it unreasonable because it orders the extension of their loading track and therefore causes almost irreparable loss and hardship to their business. Had the order been made upon notice and with opportunity for the parties to be heard, it is doubtful if, under the rule laid down in *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Commission,* 136 Wis. 146, 116 N. W. 905, this court would interfere with the exercise of the *Railroad Commission's* discretion in determining that track D should be extended, though it seems from an inspection of the map that the selection of such track would be needlessly

injurious to plaintiffs.    In this, however, we may be in error.
But it appears from the record before us that the order was
made without any opportunity given to any party interested
therein or affected thereby to be heard, and for that reason it
must be set aside.    True, a hearing had previously been given
as to an entirely different route, in which all parties partici-
pated, but that is not equivalent to a hearing upon the route
finally selected by the *Railroad Commission.*    It seems to us
that a consideration of the extension of track C or the build-
ing of an independent track starting between the points X
and Y is so unrelated with and foreign to a consideration of
the extension of track D that it cannot be regarded as any
hearing at all upon the latter question.

The order also provided that the track should be built
within thirty days.    In view of the fact that condemnation
proceedings may be necessary, that is not a reasonable time
within which to complete the track.    We express no opinion
as to what route should be selected, and nothing herein said
relative thereto is intended in any way to limit the full and
free scope of the judgment of the *Railroad Commission* upon
that question.    After a hearing it will no doubt fix upon a
route that will best subserve the interests of all parties, and
allow the railway company a reasonable time, in view of the
situation as it may then appear, within which to construct the
track.

*By the Court.*—The judgment of the circuit court is re-
versed, and cause remanded for further proceedings accord-
ing to law.

TIMLIN, J.    I concur in this opinion and append this note
merely to call attention to the fact that the decision in the
instant case is incompatible with and in effect overrules the
majority opinion and vindicates the dissenting opinion of
MARSHALL, J., in *In re North Milwaukee,* 93 Wis. 616, 67
N. W. 1033.    The same is true, I think, of the decision in

*State ex rel. Kenosha G. & E. Co. v. Kenosha E. R. Co.* 145 Wis. 337, 129 N. W. 600.

BARNES, J. (*dissenting*).  It is by no means clear that the railway company had a right of way to the west line of the southwest quarter of the southeast quarter of section 6. About thirty years had elapsed since the conveyances were made and the spur tracks had never been extended across this description.  The landowner was entitled to its day in court to litigate the right of the railway company to claim an easement across its premises.  The question was a purely judicial one, and, it being apparent that a substantial controversy existed, the *Commission* should not have undertaken to decide it, but should have required a bond or deposit to cover the cost of securing the right of way.  The initial mistake led to still another in fixing an unreasonably short time within which the railway company should complete the spur.  However, I do not think that the order of the *Railroad Commission* should be disturbed or that the judgment should be reversed because such order did not require a bond to be executed or a deposit to be made to indemnify the railway company for cost of right of way or because of the shortness of the time within which the railway company was required to perform.  These are matters which affect the railway company only, and it is finding no fault whatever with the order. The appellants are not concerned because the order is faulty in the respects mentioned, and the railway company should be able to take care of itself without the interposition of a friendly champion.

The majority of the court think that the order is unreasonable because it provided for the extension of the spur track designated D without giving the appellants an opportunity to be heard.  I am unable to agree to this conclusion.  Track D runs parallel with the lime kilns and as close thereto as practicable, and is used for the storage of cars while being

loaded with lime from the kilns.    Track C runs parallel with track D and a sufficient distance therefrom to permit cars to conveniently pass.    This track is also used to store cars while they are being loaded from the kilns.    The original petition prayed for an extension of track C, and the original order of the *Commission* granted the prayer of the petition in this behalf.    The contention of the appellants before the *Commission* was twofold: (1) The *Eden Company* should not be allowed the use of any portion of the spur track; and (2) if such use were permitted, the spur track asked for should connect with the one in use at a point nearer to the main line than the switch which forms the entrance to track C, or, in other words, the connection should be so made that cars on loading tracks C or D would not be interfered with in switching cars to and from the *Eden* plant.

In reference to the use to which switch tracks C and D were put, Mr. McConnell, the superintendent of the *Union Lime Company,* testified before the *Commission* as follows:

"Tracks C and D are used for storing cars while they are being loaded.    Could load ten cars on the two tracks, one on each track opposite each of the five kilns.    Q. In loading these cars, how is it arranged so as to load cars on track C?    A. We place a wheeling plank from the car down on track D to the car on track C and wheel across.    Q. Does it occur in the prosecution of your business there that it is necessary to have cars placed on both of these tracks C and D for loading lime?    A. Yes, sir.    Q. How frequently does that occur?    A. Every day in the year."

This witness further testified on cross-examination that it was a matter of necessity to use track C for loading lime. He also testified that it was "more convenient to have cars opposite each other than it is to have to wheel clear across the shed and load the car on the first track."    The attorney for the *Eden Company* endeavored on cross-examination to secure an admission to the effect that it would be as convenient for loading to store all the cars on track D, and move them along

as they were loaded, as it would be to use both tracks, but he was very decided in his statement that such would not be the case.

Thus it will be seen from the evidence of the principal witness for the appellants that tracks C and D were equally necessary for loading purposes throughout the year, and this is the testimony which the *Commission* had before it when it concluded to order an extension of track D rather than of track C. There were good reasons for doing this. If one or the other of the tracks were extended, it made no difference to the appellants which should be selected. Track D approached nearer the *Eden Company's* premises than did C. So it would be cheaper for that company to have track D extended, and besides, it might well be that the railway company owned the right of way to the *Eden Company's* premises along the line of track D, so that condemnation proceedings with their concomitant expenses and delays would be unnecessary. The fact that the petition asked for the extension of track C did not obligate the *Commission* to extend such track or else refuse to order any extension. Pleadings before the *Commission* are informal. The *Commission* is not a judicial body that is bound by strict rules of procedure. It deals with substance rather than nonessentials. It acted within its jurisdiction in making this order, and such an order is made *prima facie* lawful and reasonable by statute (sec. 15, ch. 362, Laws of 1905). It must stand until it is declared unreasonable by a court of competent jurisdiction in a suit brought by the aggrieved party (sec. 16, ch. 362, Laws of 1905). What the petitioner wanted primarily was the extension of a spur track onto its premises at a reasonable cost. Which track was extended was immaterial to it so long as the expense was not too burdensome. The matters of running the spur track from the main line and of extending the wood track A and the loading tracks D and C and of tapping the main spur track between the switch leading to track C and the main line

were all considered and evidence was offered in relation thereto. In addition to this, the *Commission* was not concluded by this evidence. It might make an independent investigation if it saw fit, by sending its engineers or experts to examine the *locus in quo,* or the commissioners might themselves make such an examination and consider what they observed.· But, taking the testimony before the *Commission,* it is plain that every objection to the extension of track D applied with equal force to the extension of track C.

This brings us to a consideration of the evidence offered in court. Very little evidence was given on the trial upon the question we have been considering. Mr. Robertson, the president of the *Union Lime Company,* said it would be a greater damage to his company to have track D extended than to extend track C, for the reason that "this that we call our lime track is constantly in use and cars have necessarily to be pulled in and out on that track. The track marked D is in more constant use than the track marked C. The extension of either of the tracks marked C and D would cause very much greater interference with our business and damage to our property than the construction of a track commencing at some point on the existing track between the points marked X and Y on Exhibit 10, because these tracks marked C and D are our loading tracks, both used for loading." The points X and Y referred to were between tracks C and D and the main line. The foregoing embodies every shred of new testimony offered on the trial concerning the damage that would result from the extension of track D rather than track C. The evidence taken before the *Commission* was before the court. Mr. Robertson was one of the general officers of the company, which operated a large number of kilns at various places, and resided in Milwaukee. Mr. McConnell was the superintendent in charge of the *Eden* quarries. In giving his evidence before the *Commission* Mr. Robertson did not assume to be familiar with the details of carrying on the business at Eden, but referred his inquisitors to Mr. McConnell.

So the trial court had before it the evidence of McConnell that tracks C and D were put to equal use in loading and that both were used every day in the year, and the evidence of Robertson that it would be more inconvenient to his company to extend track D than it would to extend track C, because the former was in more constant use than the latter. On this state of the evidence the trial court found that the order was "not an unreasonable exercise of the power vested in the defendant *Railroad Commission*."

The *Commission* having jurisdiction to make the order, it was, as before stated, *prima facie* reasonable until declared unreasonable by the courts. The appellants could not disregard it, but were obliged to pursue the course which they did; that is, to bring an action to set the order aside because it was unreasonable. It was incumbent on them to show clearly and satisfactorily by the evidence offered that it was unreasonable. They assumed this burden. They offered in evidence the testimony of McConnell taken before the *Commission,* and also had Mr. Robertson testify. The evidence of McConnell, the man familiar with the everyday work at the kilns, showed that it was wholly immaterial to the appellants which of the two tracks was extended, if one had to be extended. The testimony of the witness not so familiar with the method of carrying on the work at the plant was to the effect that it would be more inconvenient to have track D extended than track C, because it was used more. This is the whole case of the appellants on this point, aside from the evidence tending to show what damages the appellants would suffer if their loading tracks were interfered with. On this state of the evidence the trial court refused to hold the order of the *Commission* unreasonable, and on such evidence this court reverses the trial court and the *Commission*. I do not desire to make further comment than to say that I cannot agree with the conclusion reached by this court, and that I deem it a misfortune to have the work of this important *Commission* hampered by what looks to me to be an unreasonable interpretation of the

law. In ordering the service asked for, the *Railroad Commission* was carrying out a legislative function pure and simple. By exercising its power of investigation it could determine the reasonableness of the service demanded much more intelligently than the legislature itself could. Where no positive law is violated by the *Commission,* its decision as to what is reasonable should be entitled to as much respect in the courts as would the decision of the legislature itself, and it would have to be a clear case indeed that would warrant the courts in overturning an act of the legislature because it was unreasonable. Subd. *c,* sec. 16, ch. 362, Laws of 1905, places the burden of proof on the appellant to show that the order is unreasonable. Not only this, but it requires that unreasonableness be established by clear and satisfactory evidence as a condition precedent to the right to have the order declared void. It seems to me that the evidence tending to establish the unreasonableness of the order in question falls far short of being either clear or satisfactory. In fact, I think the evidence preponderates in favor of the finding of the *Commission* and that of the trial court.

So it seems to me that the case should be disposed of on its merits and that the court should either hold that any order providing for the extension of track D would be unreasonable and unlawful and could not be sustained, or that the record does not affirmatively show that the order under attack was unreasonable. I think the appellants were given an opportunity to be heard and were heard in reference to the extension of track D. If this were not so, they were fully advised of the proposed extension of track C and were fully heard in reference thereto, and on their own showing on the trial it was immaterial which of the two parallel tracks located a few feet from each other was extended. As I view the case the judgment should be affirmed.

SIEBECKER, J. I concur in the foregoing opinion of Mr. Justice BARNES.