WISCONSIN TELEPHONE COMPANY, Respondent, vs. PUB-
LIC SERVICE COMMISSION OF WISCONSIN, Appellant.

*December 12, 1931—January 12, 1932.*

For the appellant there were briefs by the *Attorney General, Benjamin Poss* of Milwaukee, special counsel, and *David E. Lilienthal* of Madison of counsel, and oral argument by *Mr. Lilienthal, Mr. Poss, Mr. Samuel Becker* of Milwaukee, and *Mr. Samuel Bryan,* assistant attorney general.

For the respondent there were briefs by *Miller, Mack & Fairchild* and *J. F. Krizek,* and oral argument by *J. G. Hardgrove,* all of Milwaukee.

OWEN, J. This appeal presents the question of the constitutionality of sec. 196.85, Stats., which was enacted by ch. 183, Laws of 1931, and amended by ch. 475, Laws of 1931. This act imposes upon the public utilities the expense resulting from their regulation by the state. In the first place, it requires the individual utility examined or investigated by the Public Service Commission, pursuant to its powers, to pay the expenses reasonably attributable to such investigation, appraisal, or service; "provided, however, that the commission may exempt and relieve such public utility, power district, or railroad from the duty of paying such expenses, or a portion thereof, but only upon a finding that the *public interest requires* that such public utility, power district, or railroad be thus exempted and relieved, in which event such expenses shall not be chargeable as a part of the remainder described in subsection (2) of this section." By sub. (2) of the section the commission

is required, within ninety days after the close of each fiscal year, to ascertain the total of its expenditures during such year which are reasonably attributable to the performance of its regulatory duties and to deduct therefrom all amounts collected directly from the utility investigated or examined, and to assess the remainder to the several public utilities, power districts, street and interurban railways in proportion to their respective gross operating earnings during the last calendar year, and requires the public utilities so assessed to make payment of such assessments within a specified time.

It appears from the complaint that on or about July 29, 1931, the defendant commission instituted a state-wide investigation of the affairs of the plaintiff, and on September 12, 1931, sent the plaintiff a tentative bill setting out certain expenses which it proposed to assess against the plaintiff under sec. 196.85. This action was brought to restrain the Public Service Commission from making said assessment on the ground that said act is unconstitutional.

There is a general challenge on the part of the plaintiff to the power of the legislature to impose upon the public utilities of the state the cost of their regulation. We think such power undoubtedly resides in the legislature. It is a well settled principle that the cost of regulating and supervising certain businesses may be imposed upon such businesses so long as the amount imposed does not exceed the reasonable cost of regulation and so far as the power is not prostituted to the purpose of raising general revenue. *Wisconsin Tel. Co. v. Milwaukee,* 126 Wis. 1, 104 N. W. 1009; *Wadhams Oil Co. v. Tracy,* 141 Wis. 150, 123 N. W. 785; *Milwaukee v. Milwaukee E. R. & L. Co.* 147 Wis. 458, 133 N. W. 593; *Milwaukee E. R. & L. Co. v. Milwaukee,* 167 Wis. 384, 167 N. W. 428. This is the theory upon which a license fee is exacted of pawnbrokers, peddlers, and other businesses requiring police and other governmental supervision. It is the principle upon which insurance com-

panies are required to pay the cost of investigation made by the insurance department, and upon which banks are made to bear at least a portion of the expense incident to their examinations by the banking department. In *Charlotte, C. & A. R. Co. v. Gibbes,* 142 U. S. 386, 12 Sup. Ct. 255, a law of the state of South Carolina imposing upon the railroads of that state the cost of their regulation by the Railroad Commission was expressly approved. In that case it was pointed out that the expense thus imposed upon the railroad companies was analogous to that imposed upon vessels for examination under the quarantine laws, which provision is a part of all quarantine systems.

It is well settled in this country that the regulation of public utilities is a necessary governmental function, and no reason is seen why the state may not impose upon them the expense of regulation. Public utilities cannot function as such except as they receive a franchise from the state, and the state, as a condition of granting the franchise, may impose upon them the cost of regulation. *Fox River Paper Co. v. Railroad Commission of Wisconsin,* 274 U. S. 651, 47 Sup. Ct. 669. If it be objected that it is beyond the power of the state to impose such condition upon them after the franchise is granted, then it may be answered that the power to alter, amend, or repeal corporate charters contained in sec. 1, art. XI, of the constitution furnishes abundant power to the legislature to impose such reasonable burdens as an amendment to the charters of such corporations. *Superior W., L. & P. Co. v. Superior,* 174 Wis. 257, 181 N. W. 113, 183 N. W. 254. While the public utility law does not confine the right to exercise the functions of a public utility to corporations, it probably is a fact that those who act as such outside of corporations are inconsequential in number. At any rate, the corporation cannot complain if it is treated similarly to all other corporations engaged in the same business. As a corporation, it

cannot act at all except with the consent of the legislature, and in authorizing it to act the legislature may impose upon it such conditions as it may see fit, no matter how harsh such conditions may be, and after organization it may impose a condition so reasonable as the one here imposed under its authority to amend corporate charters. While the above challenge to the law has been made, we cannot feel that it was presented with any great assurance that it is of substantial merit.

But the law is challenged with far greater vigor upon another ground—a ground that does not go to the fundamental power and authority of the legislature to impose upon the utilities of the state the cost and expenses of their regulation.

Attention is called to the fact that the law first requires the commission to impose upon the individual utility investigated the cost of such investigation, "provided, however, that the commission may exempt and relieve such public utility, power district, or railroad from the duty of paying such expenses, or a portion thereof, but only upon a finding that the public interest requires that such public utility, power district, or railroad be thus exempted and relieved, in which event such expenses shall not be chargeable as a part of the remainder described in subsection (2) of this section." It is claimed that this proviso delegates to the commission the exercise of purely legislative power, in that it authorizes the commission to exempt a particular utility from the expenses of the investigation "when the public interest requires" that such public utility be exempt and relieved from such expense.

Our first observation with reference to this provision is that it probably is not happily framed to express the evident legislative intent. It is difficult to conceive of a situation where the public interest requires the public utility to be exempt and the burden to be borne by the public. In a

selfish aspect at least the public interest would always re-
quire the public utility to bear the expense. Upon the argu-
ment of the case one of the public service commissioners was
asked to indicate the circumstances under which public inter-
est would require such an exemption. As an illustration, he
referred to the fact that there was a telephone company in
the state whose reports indicated a most economical and
efficient management of its affairs, and disclosed rendition of
service at a strikingly low cost. The Public Service Commis-
sion, in order to ascertain the methods employed by this tele-
phone company to bring about such economy, conducted an
investigation of the books and affairs of that company for
the purpose of advising itself with reference to its methods.
The purpose of such investigation was not to regulate the
affairs of the company, but to furnish the commission with
information valuable to the commission in its supervision
of other telephone companies, and to enable it to bring
about similar economies of management on the part of other
telephone companies in the state. It is apparent that the
cost of an examination made for such purposes should not
be imposed upon the company examined; but, at the same
time, it was in the public interest that the cost of such an
examination should be borne by some one besides the pub-
lic. What the legislature evidently had in mind by this
proviso were examinations conducted not for the purpose of
regulation or control of the company investigated, but for
more general purposes. Such an examination is probably
authorized by sec. 196.02 (4), which provides:

"The commission shall have authority to inquire into the
management of the business of all public utilities, and shall
keep itself informed as to the manner and method in which
the same is conducted, and may obtain from any public
utility all necessary information to enable the commission
to perform its duties."

It is apparent that if the commission is to accomplish the
highest economy in the matter of management on the part

of public utility companies, it is necessary for it to keep abreast of the best and most modern methods, and for the purpose of securing this information it is authorized to make examinations of well conducted companies. But to make such companies pay the expenses of disseminating such information would be to penalize rather than to reward merit, and would be intuitively condemned as unjust by every fair-minded man. We apprehend that the statute would more nearly express the legislative intent if it imposed upon the utility investigated the costs of the investigation, except in cases where the investigation is conducted for general, public, or informative purposes, leaving it to the commission to determine whether the investigation was for such purposes.

The assault upon this proviso is, that a determination of the question of what public interest requires is a purely legislative function which cannot be delegated to the Public Service Commission, and that the legislature has left to the commission the power to legislate as to what the public interest requires. "The power to declare whether or not there shall be a law; to determine the general purpose or policy to be achieved by the law; to fix the limits within which the law shall operate, is a power which is vested by our constitutions in the legislature, and may not be delegated. When, however, the legislature has laid down these fundamentals of a law, it may delegate to administrative agencies the authority to exercise such legislative power as is necessary to carry into effect the general legislative purpose, in the language of Chief Justice MARSHALL 'to fill up the details;' in the language of Chief Justice TAFT 'to make public regulations interpreting the statute and directing the details of its execution.' It is legislative power of the latter kind which is oftentimes called the rule-making power of boards, bureaus, and commissions." *State ex rel. Wisconsin Inspection Bureau v. Whitman,* 196 Wis. 472, 505, 220 N. W. 929. "The legislature cannot delegate its power

to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend." *Locke's Appeal,* 72 Pa. St. 491, 498. Although there has been much debate in modern times concerning the delegation of legislative power to boards and commissions, this fundamental statement of the law has persisted as an exact declaration of the true underlying principle from the decision of *Dowling v. Lancashire Ins. Co.* 92 Wis. 63, 65 N. W. 738, down to the present time. It is said in *State ex rel. Adams v. Burdge,* 95 Wis. 390, at p. 402 (70 N. W. 347): "Where an act is clothed with all the forms of law, and is complete in and of itself, it may be provided that it shall become operative only upon some certain act or event, or, in like manner, that its operation shall be suspended; and the fact of such act or event, in either case, may be made to depend upon the ascertainment of it by some other department, body, or officer, which is essentially an administrative act."

Does it not appear from this act that the legislature has declared what the law shall be? Tersely stated, it declares that the public utilities shall pay the expenses of investigations of their affairs unless in the judgment of the commission public interest requires that they be exempt from such burden. It was not the legislative intent to confer upon the Public Service Commission the arbitrary power which resides in the legislature itself to determine what constitutes public interest. The legislature possesses arbitrary power in such matters and may determine that to be in the public interest which the great majority of the people believe otherwise. When they so determine there can be no appeal. This is not the kind of power which the legislature committed to the Public Service Commission. While it may be that what constitutes the public interest is at times somewhat intangible in character, yet the Public Service Commission may pass reasonable judgment upon the facts and

circumstances under consideration and come to a reasonable conclusion as to what the public interest requires under the circumstances, and its conclusion is subject to judicial review under the express provisions of the law which makes all determinations of the commission subject to judicial review. Sec. 196.41, Stats. This falls far short of the arbitrary power which resides in the legislature itself. The legislature realizes the impossibility of anticipating and providing for every special situation involved in the question of what the public interest requires, and instead of attempting the impossible it gives flexibility and efficiency. to the law by providing that the commission shall first exercise its reasonable judgment as to what shall constitute public interest in the multiplicity of circumstances arising and then making its judgment subject to the judicial test of reasonableness, a test which cannot be applied to the legislative exercise of power, in the same manner at least. While a review of the many cases on this question cannot be helpful in placing us in possession of the fundamental principle which governs the situation, a review of a few cases will suffice to indicate that power as indefinite and as intangible as this, has frequently been upheld as proper power to be committed to administrative bodies.

In *State ex rel. Northern Pac. R. Co. v. Railroad Comm.* 140 Wis. 145, 121 N. W. 919, the power conferred upon the Railroad Commission to apportion the costs which should be paid by each company upon one railroad track crossing another was sustained.

In *State ex rel. Kenosha Gas & E. Co. v. Kenosha E. R. Co.* 145 Wis. 337, 129 N. W. 600, the power delegated to the former Railroad Commission by sec. 196.50 to determine whether public convenience and necessity required the presence of a competing utility was upheld as a proper delegation of power. (This case, which was overlooked at the time of the decision of the case of *Union Co-op. Tel. Co. v. Public*

*Service Comm., ante,* p. 160, 239 N. W. 409, seems to settle doubts which were there expressed concerning the validity of the public convenience and necessity statute.) We can see little difference between the power here considered and the power to determine whether public convenience and necessity requires the presence of a competing utility. Each demands the determination of what the public interest requires.

In *Union Lime Co. v. Railroad Comm.* 144 Wis. 523, 129 N. W. 605, the power delegated to the Railroad Commission to determine that the construction and operation of a spur track "is not unreasonably harmful to public interest" was sustained.

In *Wisconsin Gas & E. Co. v. Fort Atkinson,* 193 Wis. 232, 213 N. W. 873, a provision directing the Railroad Commission to determine whether the "interest of the municipality and of the residents thereof will be best served" by the sale of its municipal plant was upheld.

In *Intermountain Rate Case,* 234 U. S. 476, 34 Sup. Ct. 986, the power of the Interstate Commerce Commission "to suspend a portion of the long and short haul clause of the interstate commerce law in special cases," without any attempt to define the term "special cases," was upheld.

In *People of New York v. Ulster & Delaware R. Co.* 128 N. Y. 240, 28 N. E. 635, a statute imposed a duty to extend lines of railroad with forfeiture as a penalty, but the commission could exempt from the duty to extend lines upon a finding that "the public interests under all the circumstances do not require such extension."

*Ex parte Birmingham,* 199 Ala. 9, 74 South. 51, is another case in which very similar power was sustained.

The argument against the validity of the delegation of this power is based on the fact that the legislature has set up no standard to govern the commission in the exercise

of the power. While the fixing of standards by which the administrative body is to be guided in the exercise of such powers is not infrequent, as appears from the above cases, and in fact from the general rule on the subject, such standards are not necessary in order to constitute the power delegated administrative rather than legislative. In none of the cases cited were there any standards fixed by which the exercise of the discretion vested in the commission was to be limited. They were to make reasonable determinations upon situations as they arose and their determinations were subject to judicial review. This constitutes a delegation of administrative and not legislative power. They had no power to determine what the law should be, but the law simply declared that they should exercise a reasonable judgment as to whether the law should be suspended under certain situations.

There is much discussion in the briefs concerning the act of the legislature of 1931 (ch. 314) in creating sec. 198.55. This act provides for the organization of the State Utility Corporation of Wisconsin and for the organization of power districts with the purpose of affording competition between the publicly owned plants and privately owned utilities. It is made the duty of the Public Service Commission to offer every assistance to this public corporation, and it seems to be feared that through the law under consideration the privately owned utilities may be required to bear the expense of promoting the successes of the publicly owned and managed competing utility or utilities. If either the law under consideration, or sec. 198.55, or both of them together, gives rise to such possibilities, our present contemplation of them does not enable us to discern such possibilities with that clarity which enables us to say that the present assessment was imposed upon the company for any improper purpose, or that its imposition has offended against any provision of

either state or federal constitution. It seems not unlikely that the proviso here attacked was inserted in the law for the purpose, among other purposes, of preventing any injustice such as that apprehended as a result of the enforcement of the law under consideration. At any rate, the possibility is too remote and hazy to enable us in this general consideration to declare the law unconstitutional. If the enforcement of the law gives rise to situations impairing constitutional rights, they may be considered as they arise. But that such situations will arise is not sufficiently apparent from a general consideration of the law as to indicate even a probability that its enforcement or administration will result in the impairment of the constitutional rights of any one.

*By the Court.*—Order reversed, and cause remanded with instructions to enter judgment sustaining the demurrer to the complaint.