In the Matter of the Application of KINGS COUNTY LIGHTING COMPANY, Petitioner, for a Certiorari Order against MILO R. MALTBIE and Others, Constituting the Public Service Commission of the State of New York, and Another, Respondents.

Third Department, May 15, 1935.

*Henry R. Frost* and *Elmer B. Sanford* [*William L. Ransom, Edward J. Crummey* and *Henry Jaffe* of counsel], for the petitioner.

*Charles G. Blakesiee* [*John J. Donohue* and *John T. Ryan* of counsel], for the respondents.

BLISS, J. The fundamental question on this review treats of the constitutionality of sections 18-a and 18-b of the Public Service Law, as added by chapter 282 of the Laws of 1934. In passing upon this question the court should first decide what the statute means before determining its validity. These sections are so-called public utility regulatory statutes. They read:

"§ 18-a. Costs and expenses of proceedings before the commission. Whenever the public service commission in a proceeding upon its own motion, upon complaint, or upon application to it, shall deem it necessary in order to carry out its statutory duties, to investigate the operations, service, practices, accounting records, rates, charges, rules and regulations, or to make valuations or revaluations of the property of any public utility, such public utility shall be charged with and pay such portion of the compensation and expenses of the commission, its officers, agents and employees, including employees temporarily employed, as is reasonably attributable to such investigation, valuation or revaluation, provided an opportunity to be heard thereon shall first have been granted to such public utility. The commission shall ascertain the costs, including the compensation and expenses of the commission, its officers, agents and employees, and shall determine the amount to be paid by the public utility and shall render a bill therefor by registered mail to the public utility. Such bill shall be rendered either at the conclusion of the investigation, valuation or revaluation, or from time to time during its progress, and the amount of such bill so rendered by the commission shall be paid by such public utility to the commission within thirty days from the date of its rendition. The total amount which may be charged by the commission to any public utility under authority of this section in any calendar year shall not exceed one-half of one per centum of such public utility's gross operating revenues derived from intrastate utility operations in the last preceding calendar year. The amount assessed against a public utility, not paid within thirty days after such determination, shall draw interest at the rate of six per centum per annum.

"§ 18-b. Establishment of revolving fund; appropriation. The sum of three hundred thousand dollars is hereby appropriated to the department of public service out of any moneys in the state treasury not otherwise appropriated, to establish and provide a

revolving fund for the use of the public service commission in paying the compensation and expenses of employees temporarily employed in investigating the operations, service, practices, accounting records, rates, charges, rules and regulations, or in making valuations or revaluations of the property of any public utility. All moneys collected by the public service commission pursuant to section eighteen-a shall be paid monthly, accompanied by a detailed statement thereof, by the public service commission to the department of taxation and finance and all of said moneys so paid representing the compensation and expenses of temporary employees shall not be commingled with any other moneys but shall be deposited in a separate bank account or accounts and credited to said revolving fund; the balance of said moneys shall be paid into the state treasury and credited to the general fund. The said sum of three hundred thousand dollars herein appropriated and all subsequent credits to said revolving fund shall be paid on the audit and warrant of the comptroller upon vouchers approved by the chairman of the public service commission."

The general intent and scheme of the statute are that under certain circumstances the cost of an investigation of the operations, practices, accounting records, rates, charges, rules and regulations of a public utility or of a valuation or revaluation of its property must be borne by the utility. The conditions under which such cost must be paid by the utility are two. First, there must be a proceeding pending before the Commission, which was instituted either upon the Commission's own motion, upon complaint or upon application to the Commission. Next, there must be a determination by the Commission that in order to carry out its statutory duties it is necessary to make the investigation, valuation or revaluation mentioned in the statute. If these preliminary facts exist then the utility shall be charged with certain expenses of the investigation or valuation. These expenses are declared to be such as are reasonably attributable to such investigation or valuation. The statute then provides that the utility must first have an opportunity to be heard thereon. The remainder of section 18-a provides further machinery for the determination of the amount to be paid by the public utility and the collection thereof. Section 18-b sets up a revolving fund consisting of an initial appropriation of $300,000 by the State and the moneys collected thereafter by the Commission pursuant to section 18-a. The original amount appropriated and all subsequent credits are to be paid out for such investigations or valuations on the audit and warrant of the Comptroller upon vouchers approved by the Chairman of the Public Service Commission.

This analysis reveals that the statute charges the public utilities with certain costs of regulation, provides for the determination of the amount of such costs and the collection thereof and makes the expenses of such regulation payable primarily from a revolving fund composed of an initial appropriation by the State and the later additions by way of collections from the utilities.

In determining the validity of this statute we must be guided, not by what has been done by the Public Service Commission under the statute in this specific instance, but by what may be done under it. (*Stuart* v. *Palmer*, 74 N. Y. 183.) There is a presumption in favor of constitutionality (*Sage* v. *City of Brooklyn*, 89 N. Y. 189), and the burden of showing unconstitutionality is on the party asserting it. (*People* v. *N. Y. Carbonic Acid Gas Co.*, 196 N. Y. 421.) This must be shown conclusively (*People ex rel. Darling* v. *Warden of City Prison*, 154 App. Div. 413) and beyond all reasonable doubt. (*Ogden* v. *Saunders*, 12 Wheat. 213.) Where a statute is susceptible of two different constructions, one of which will render it valid and the other invalid, the former must be adopted.

It is conceded by the petitioners that the general object and purpose of this statute are valid and that the State may impose upon a public utility the cost of its regulation. With this concession we concur. (*Charlotte, C. & A. R. R. Co.* v. *Gibbes*, 142 U. S. 386; *People ex rel. New York Electric Lines Co.* v. *Squire*, 145 id. 175.) The utility objects here, not to the general purpose of the statute, but to the method of administration provided. It urges that the statute attempts an invalid delegation of legislative power to the Public Service Commission in that it fails to provide proper legislative standards to guide the Commission in determining when and under what circumstances a utility shall be assessed and what costs and expenses shall be so assessed.

Petitioner relies to a considerable extent upon the case of *Panama Refining Co.* v. *Ryan* (293 U. S. 388) to support its contention that the statute sets up no legislative standard to guide the Commission in the administration of the law. It claims that there exists here an "unfettered discretion" and that the result is to invest the Commission with "an uncontrolled legislative power." (*Panama Refining Co.* v. *Ryan, supra*, 431, 432.) The statute fixes the rule of necessity — necessity in order to carry out the Commission's statutory duties. The expression "shall deem it necessary" means "shall find it necessary." (*Field* v. *Clark*, 143 U. S. 649.) It has been held that the granting by the Legislature to the Public Service Commission of the power to ascertain and determine what are reasonable maximum rates to be charged by a public utility

is not an invalid delegation of legislative authority. The standard there set is the rule of reason. (*Village of Saratoga Springs* v. *Saratoga Gas, etc., Co.*, 191 N. Y. 123.) We see no difference in principle between a delegation of the power to determine what is reasonable and a similar grant to determine what is necessary. If difference there be, it is in favor of the latter. " Necessary " is a less elastic and narrower term than " reasonable." Various elemental facts enter into the determination of the ultimate fact of necessity. It is the ultimate fact of necessity that must be found and no unyielding and arbitrary rule can be established in advance to determine in all instances that which is necessary. Perhaps one of the most familiar examples of an administrative board determining the fact of necessity is the issuance of certificates of public convenience and necessity by the Public Service Commission to prospective railroad or other transportation corporations. Such a delegation by the Legislature to the Public Service Commission has been universally accepted for many years. The legislative standard of necessity is sufficient and this statute meets the requirements of constitutionality in this respect.

The statute charges the costs against the utility once the necessity is established. The Commission may not act arbitrarily in making its finding of necessity. An opportunity to be heard as to the necessity of instituting the investigation or valuation is afforded by the statute to the utility.

As to the apportionment, the statute sets up the rule of reason. This is sufficient. (*Village of Saratoga Springs* v. *Saratoga Gas, etc., Co., supra.*) The statute likewise requires an opportunity to be heard thereon. To conclude, we find no fatal defect in the statute as an improper delegation of legislative power. It declares the law and fixes sufficiently definite standards to guide the Commission in its administration.

The petitioners further urge that the statute is unconstitutional in that it authorizes the Chairman of the Public Service Commission to approve the payment of State funds to temporary employees without an appropriation by the Legislature as required by article 3, section 21, of the New York State Constitution. With this contention we cannot agree. In the first place, there is an appropriation of the sum of $300,000 made by the statute and in so far as that amount is concerned there is no violation of the Constitution. Secondly, we fail to see wherein the petitioner is affected or in any way prejudiced by this provision of the statute. Such payments are to be made from funds previously appropriated by the State or previously paid in by public utilities. Undoubtedly the Public Service Commission may not order payments from

unappropriated funds, and this particular statute does not authorize such payments.

Our attention must now be directed to the orders which have been made and the proceedings had under authority of this statute to ascertain whether there has been a sufficient compliance with the statute. The question of procedure in this particular case is entirely disassociated from the one of constitutionality of the statute. On May 8, 1934, the Commission, by order which recited that a rate proceeding against the petitioner was then pending and that it deemed it necessary in order to carry out its statutory duties, to investigate the operations, practices, accounting records, rates, charges, rules and regulations and make a valuation of petitioner's property, ordered that a public hearing be held and that at such hearing the petitioner be given an opportunity to be heard as to the charging to and payment by it of such portion of such expenses as was reasonably attributable to such investigation and valuation. On the so-called hearing petitioner appeared. No proof was taken and on May 22, 1934, an order was made that such portion of such expenses as was reasonably attributable to the investigation and valuation should be charged to petitioner and that the Commission should from time to time ascertain such costs and render bills therefor. Petitioner's application for a rehearing was denied on July 10, 1934, and on July 17, 1934, another order was made by the Commission determining the actual amount of costs then reasonably attributable to such investigation and valuation and directing that this amount be paid by petitioner.

The entire record is entirely devoid of any facts upon which the Commission based any of these orders, either as to the necessity of the investigation and valuation or as to the attributable costs. The Commission has not complied with the statute.

" This complete absence of ' the basic or essential findings required to support the Commission's order ' renders it void." ( *United States* v. *B. & O. R. R. Co.*, 293 U. S. 454, 464.) It failed to make a proper finding of necessity based upon sufficient proof. It failed to give the petitioner sufficient opportunities to be heard as to the necessity of the investigation and valuation and the apportionment.

The orders and determinations should be annulled, with fifty dollars costs and disbursements and matter remitted.

HILL, P. J., RHODES and McNAMEE, JJ., concur; HEFFERNAN, J., dissents in part, with an opinion.

HEFFERNAN, J. (dissenting in part). I concur in the prevailing opinion in so far as it holds that sections 18-a and 18-b of the

Public Service Law are constitutional. I disagree entirely with the conclusion that the burden is on the Public Service Commission to establish the necessity for an investigation.

Complaint was made to the Commission relating to the prices which petitioner was charging the public for gas. Under the provisions of the Public Service Law the Commission is charged with the duty of investigating the rates and charges of any utility subject to its jurisdiction in a proceeding brought on its own motion whenever, in its discretion, it deems such an investigation to be necessary. That the Commission has a right to make such an investigation is no longer an open question (*Village of Saratoga Springs* v. *Saratoga Gas, etc., Co.,* 191 N. Y. 123.) The enactment of section 18-a of the Public Service Law by chapter 282 of the Laws of 1934 has not changed the rule. Prior to the enactment of this statute the expenses of such an investigation were borne by the State. The Legislature has now declared that utilities shall " pay such portion of the compensation and expenses * * * as is reasonably attributable to such investigation."

The investigation of the rates and charges of the petitioner was made under the provisions of sections 71 and 72 of the Public Service Law. Section 72 requires that the Commission make an investigation of any matters necessary " to enable it to ascertain the facts requisite to the exercise of any power conferred upon it." One of the powers so conferred is the fixing of just and reasonable rates and charges to be made by the petitioner and other utilities for the furnishing of gas or electricity. In order to determine a proper rate the Commission was under the absolute duty of investigating and making a valuation of the plant and properties of petitioner. In the present proceeding the Commission has determined the necessity of investigating the rates charged for gas by the petitioner. After making this determination petitioner was accorded an opportunity to be heard and to present any facts or circumstances which it considered relevant on the question of the necessity for such an investigation. Petitioner failed to advance any reason showing that such an investigation was not necessary. Petitioner's claim is that the Commission has no right to make such an investigation without proof as to the necessity therefor. The Commission was under no duty to present to the petitioner reasons why such an investigation was necessary. It is quite obvious that prior to such an investigation it would be impossible for the Commission to determine the result. If the Commission had absolute knowledge that petitioner was violating the law then there would be no necessity to conduct an investigation. It was not the legislative intent in enacting section 18-a of the Public Service Law to limit the power

which the Commission already had and which it had exercised for many years in making investigations. The only reasonable construction of that section is that the Commission shall make a determination from information available to it and then to give the utilities an opportunity to show cause, if any they have, why such an investigation should not be made. Any other construction, it seems to me, is repugnant to the intent and spirit of the Public Service Law. To hold that the Commission must clearly establish that a utility is violating the law before its affairs may be investigated, and that the determination when made is subject to review in the courts, would effectively prevent any investigation which the history of the utilities has shown to be so necessary and so wholesome for the protection of the public.

I concur in the view of the majority that the petitioner was entitled to a hearing as to the amount of the compensation and expenses which the Commission proposed to assess against it before the same was fixed. In failing to give it such an opportunity the Commission erred.

The order made by the Public Service Commission determining that an investigation was necessary should, therefore, be confirmed and the order assessing compensation and expenses against petitioner should be vacated and the matter remitted to the Commission to hold a hearing thereon.

Orders and determinations annulled, with fifty dollars costs and disbursements, and matter remitted.