[Nos. 25761, 25775, 25776, 25762, 25767. *En Banc.* August 16, 1935.]

THE STATE OF WASHINGTON, *Respondent,* v. NORTH-WESTERN ELECTRIC COMPANY, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. INTERSTATE POWER AND LIGHT COMPANY, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. WINLOCK WATER COMPANY, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. PUGET SOUND POWER AND LIGHT COMPANY, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. OREGON-WASHINGTON TELEPHONE COMPANY, *Appellant.*[1]

[1]Reported in 49 P. (2d) 8.

185

BLAKE and HOLCOMB, JJ., dissent.

*John A. Laing, Henry S. Gray,* and *Cleland & Clifford,* for appellant Northwestern Electric Company.

*R. E. Ostrander,* for appellants Interstate Power and Light Company and Winlock Water Company.

*Todd, Holman & Sprague* and *Cleland & Clifford,* for appellant Puget Sound Power and Light Company.

*Glenn J. Fairbrook* and *Z. O. Brooks,* for appellant Oregon-Washington Telephone Company.

*The Attorney General, Geo. G. Hannan, Assistant, Ferd J. Schaaf,* and *Frederick J. Lordan,* for respondent.

TOLMAN, J.—These five cases were, in the court below, consolidated for trial, and after trial on the merits to the court, a judgment was entered in each cause against the defendant therein. Each defendant has appealed from the judgment against it. By stipulation, the five appeals have been consolidated in this court for all essential purposes.

These actions were brought by the state as plaintiff under the provisions of § 12, chapter 165, Laws of 1933, p. 610, which reads:

"Whenever the department in any proceeding upon its own motion or upon complaint shall deem it necessary in order to carry out the duties imposed upon it by law to investigate the books, accounts, practices

and activities of, or make any valuation or appraisal of the property of any public service company or to render any engineering or accounting service to or in connection with any public service company, such public service company shall pay the expenses reasonably attributable to such investigation, valuation, appraisal or services. The department shall ascertain such expenses, and after giving notice and an opportunity to be heard and due consideration to the amount paid by such public service company for regulation and supervision as otherwise provided by law, shall render a bill therefor, or for such part thereof as it may find necessary and reasonable, by registered mail, to the public service company either at the conclusion of the investigation, valuation, appraisal or services or from time to time during its progress. Upon receipt of a bill so rendered such public service company shall within thirty days pay to the department the amount of the expense for which it is billed, and such payment shall be paid to the state treasurer and credited by him to the public service revolving fund.

"Amounts so assessed against any public service company not paid within thirty days after the mailing of the registered letter notifying it of the amount assessed against it, shall draw interest at the rate of six per cent (6%) per annum. Upon failure to pay the same the attorney general shall proceed by civil action in the superior court for Thurston county against such public service company to collect the amount due, together with interest and costs of suit." Rem. 1934 Sup., § 10458-6 [P. C. § 5527-12].

The appellants concede that the legislature may, by a proper statute, impose upon public utilities the cost of their regulation, but aside from that concession, they here urge every conceivable objection to the statute which we have quoted.

The conclusions which we have reached upon one point obviate the necessity of setting forth and considering the other points presented.

If this statute had never been enacted, the department would, under prior statutes, have had the right, and it would have been its duty, to order and conduct special investigations of the public utilities, whenever in its judgment such a course was necessary to enable it to discharge its regulatory duties, but, of course, under the prior acts, the cost of such investigations would be borne by the general taxpayers and could not be charged to the utility investigated.

Under such prior laws, in the absence of arbitrary or capricious action, a utility has no protection from repeated investigations, except that which may arise from the fact that the investigations must be carried on at the expense of the public treasury and the probability that, under such conditions, the department would not heedlessly and recklessly expend the public money. Whatever that protection may have amounted to in the past, it is entirely withdrawn by the act under consideration. With the power to charge the costs of the investigation to the utility, it is possible for one investigation to follow another without any limit until a particular utility is destroyed.

The state relies upon similar statutes in other states which have been upheld, notably in New York and Wisconsin, but it appears that, in all such statutes, there is a limit fixed as to the amount of costs which may be imposed upon any utility in any one year; as, for instance, in the New York statute there is a provision which reads:

"The total amount which may be charged by the commission to any public utility under authority of this section in any calendar year shall not exceed one-half of one per centum of such public utility's gross operating revenues derived from intrastate utility operations in the last preceding calendar year."

Without such a limitation and perhaps an additional one permitting the utility to recover its costs

if the investigations prove to be unnecessary and unwarranted, we see no reasonable protection from persecution. Perhaps this omission does not render the statute unconstitutional, but certainly it destroys and denies the American idea of fair play which underlies our system of government. As there is some difference of opinion in the court upon this subject, we do not base our judgment upon the omission just referred to, but only make the suggestion of unfairness as a possible guide to future legislatures. We pass from that subject to what we consider the vital defect in the law.

It will be noted that the statute does not, by its terms, require a charge to the utility investigated of the expenses attributable to such investigation, but, on the contrary, the department is left practically uncontrolled and may charge all or only such part as it may consider necessary and reasonable. Clearly, here, there is no standard which can be applied alike to all similarly situated. In this respect, the statute, by its very terms, is an invitation to the department to indulge in discrimination and favoritism; and, in fact, though actuated by the best of intentions, the department has, as shown by the record, discriminated and in many cases made no attempt to collect any part of the costs of investigation. There is no such provision in either the Wisconsin or the New York statute so far as we are able to discover.

Under the equal protection clauses of both the Federal and our state constitutions, the legislature may not itself place unequal burdens on those similarly situated, and what it may not itself do, it cannot authorize others to do. In any event, the legislature may not abdicate its own power and authorize the department, without any fixed standard or guide, at its own pleasure or in its own discretion, to charge

one hundred per cent of the investigation costs to one and but one per cent, or even less, to another. With no known rule as a guide, every utility subject to investigation must be utterly dependent upon the good will or the whim of the department. We do not charge the department, as at present constituted, with intentional unfairness, nor do we anticipate that the department, as it may in the future be constituted, would intentionally discriminate; and yet the act makes such favoritism and discrimination possible, and that possibility makes the act unconstitutional.

We have examined with care the many authorities cited pro and con and find little that is helpful in any beyond the declaration of general principles which are not in doubt.

In *State ex rel. Chicago, Milwaukee & St. Paul R. Co. v. Public Service Commission,* 94 Wash. 274, 162 Pac. 523, Chief Justice Ellis, speaking for this court, aptly said:

"Touching the question of the delegation of legislative powers, the almost infinite variety of detail and circumstance, and of the laws intended to meet them, have led to an almost equal variety of judicial decision and utterance which, taken in the abstract, cannot be harmonized. A review in detail of the vast array of authorities cited is manifestly impracticable, and any notice not in detail would be wholly useless."

It must suffice to say that, in principle, the following of our cases, among others, support the views which we have here attempted to express: *State ex rel. Makris v. Superior Court,* 113 Wash. 296, 193 Pac. 845, 12 A. L. R. 1428; *Vincent v. Seattle,* 115 Wash. 475, 197 Pac. 618; *Sumner v. Ward,* 126 Wash. 75, 217 Pac. 502; *Uhden v. Greenough,* 181 Wash. 412, 43 P. (2d) 983; and *Griffiths v. Robinson,* 181 Wash. 438, 43 P. (2d) 977.

The subject is thoroughly discussed and the authorities are collated in an extensive note to be found in 12 A. L. R. 1435. See, also, *Yick Wo v. Hopkins,* 118 U. S. 356, 6 S. Ct. 1064, which is still to be regarded as a leading case on the subject of the right to equal protection under the law; and also, *Panama Refining Co. v. Ryan,* 293 U. S. 388, 55 S. Ct. 241; *Schechter v. United States,* 295 U. S. 495, 55 S. Ct. 837; *People v. Federal Surety Co.,* 336 Ill. 472, 168 N. E. 401; *People v. J. O. Beekman & Co.,* 347 Ill. 92, 179 N. E. 435; *Klein v. Barry,* 182 Wis. 255, 196 N. W. 457.

The state relies chiefly upon the case of the *Wisconsin Telephone Co. v. Public Service Commission,* 206 Wis. 589, 240 N. W. 411, and upon two recent decisions by the courts of the state of New York, entitled *Kings County Lighting Co. v. Maltbie* (App. Div.), 280 N. Y. Supp. 560, and *Bronx Gas and Electric Co. v. Maltbie,* 197 N. E. (N. Y.) 281.

We have studied these cases with care, and, as we read them, they announce no principle of law contrary to those upon which we here rely. The statutes considered in each of these cases differ vitally from our own statute in the matters which we have herein pointed out; and, as construed in the cases referred to, neither statute permits discrimination or favoritism. Therefore, the application of the general principles of law as made by the New York and Wisconsin courts is and can be no guide in applying those same principles to our own statute. A further discussion of these authorities would serve no good purpose.

We conclude that the judgments appealed from must each be reversed, and the actions must each be dismissed. It is so ordered.

BEALS, STEINERT, MAIN, and MITCHELL, JJ., concur.

GERAGHTY, J. (concurring in the result)—I concur in the result of the majority opinion. I do so for the reason that the provisions of § 12, chapter 165, Laws of 1933, p. 610 (Rem. 1934 Sup., § 10458-6 [P. C. § 5527-12]), lodge in the department of public works an arbitrary discretion in requiring the payment by some utilities of the cost of investigation and dispensing others, in whole or in part, from the obligation.

I concede the right of the state to charge, generally and ratably, the public utilities subject to regulation with the cost of maintaining the department. This has been the policy of the state for many years past. Under Rem. Rev. Stat., § 10417 [P. C. § 5637-1], public utilities are required to pay to the department of public works an annual fee of one-tenth of one per cent of their gross operating revenue. These fees are paid into a fund in the state treasurer's office known as the public service revolving fund, and out of this fund appropriations are made by the legislature for the conduct of the department.

I concede that, in addition to this uniform levy based upon a percentage of their gross receipts, the legislature can impose the cost of a particular investigation upon the utility involved, if the burden is imposed upon all alike.

Under § 12, the department may charge the whole cost of the expense of investigation to the utility in one case, and, in another, such part of the cost only as the department determines to be necessary and reasonable, thus reposing in the department a power to discriminate in favor of one as against another. The possibilities of this section are illustrated by the present case, where some utilities are charged and some exempted.

A Wisconsin statute is cited, as well as the decision of the supreme court of that state upholding it.

The Wisconsin law, after authorizing the commission to require payment of the expenses reasonably attributed to an investigation, appraisal or service, provides that the commission may exempt and relieve such public utility, power district, or railroad from the duty of paying such expenses, or a portion thereof, but only upon a finding that the public interest requires that such public utility, power district, or railroad be thus exempted and relieved.

While having the highest respect for the supreme court of the state of Wisconsin, and appreciating the fact that the public service regulatory laws of that state have pioneered the way, I cannot escape the conclusion that such a statute violates a principle fundamental in our government. The genius of our system is opposed to the lodgment of arbitrary power in any board or officer to bind one and dispense another. Our governmental system is one in which the obligations of the citizen are to be defined by equal and known rules, and not by a standard hidden in the official breast. It has been said that ours is a government of law, and not of men. Arbitrary and unregulated power has no place in such a government.

BLAKE, J. (dissenting)—Statutes imposing directly on public service corporations the cost of their regulation by the state are not of recent origin. As early as 1891, in the case of *Charlotte, Columbia and Augusta R. Co. v. Gibbes,* 142 U. S. 386, 12 S. Ct. 255, the supreme court of the United States said of such a statute:

"The mode or manner of regulation is a matter of legislative discretion. When exercised through commissioners, their services are for the benefit of the railroad corporations as well as of the public. Both are served by the required supervision over the roads and means of transportation, and there would seem

to be no sound reason why the compensation of the commissioners in such case should not be met by the corporations, the operation of whose roads and the exercise of whose franchises are supervised. In exacting this there is no encroachment upon the Fourteenth Amendment. Requiring that the burden of a service deemed essential to the public, in consequence of the existence of the corporations and the exercise of privileges obtained at their request, should be borne by the corporations in relation to whom the service is rendered, and to whom it is useful, is neither denying to the corporations the equal protection of the laws or making any unjust discrimination against them.''

Of all the cases cited in the majority opinion, only three are concerned with the construction of legislative enactments of the character of § 12, chapter 165, Laws of 1933, p. 610 (Rem. 1934 Sup., § 10458-6 [P. C. § 5527-12]) : *Wisconsin Telephone Co. v. Public Service Commission,* 206 Wis. 589, 240 N. W. 411; *Kings County Lighting Co. v. Maltbie* (App. Div), 280 N. Y. Supp. 560; *Bronx Gas and Electric Co. v. Maltbie,* 197 N. E. (N. Y.) 281.

The statute of New York is as follows:

"18-a. *Costs and expenses of proceedings before the commission.* Whenever the public service commission in a proceeding upon its own motion, upon complaint, or upon application to it, shall deem it necessary in order to carry out its statutory duties, to investigate the operations, service, practices, accounting records, rates, charges, rules and regulations, or to make valuations or revaluations of the property of any public utility, such public utility shall be charged with and pay such portion of the compensation and expenses of the commission, its officers, agents and employees, including employees temporarily employed, as is reasonably attributable to such investigation, valuation or revaluation, provided an opportunity to be heard thereon shall first have been

granted to such public utility. The commission shall ascertain the costs, including the compensation and expenses of the commission, its officers, agents and employees, and shall determine the amount to be paid by the public utility and shall render a bill therefor by registered mail to the public utility. Such bill shall be rendered either at the conclusion of the investigation, valuation or revaluation, or from time to time during its progress, and the amount of such bill so rendered by the commission shall be paid by such public utility to the commission within thirty days from the date of its rendition. The total amount which may be charged by the commission to any public utility under authority of this section in any calendar year shall not exceed one-half of one per centum of such public utility's gross operating revenues derived from intrastate utility operations in the last preceding calendar year. The amount assessed against a public utility, not paid within thirty days after such determination, shall draw interest at the rate of six per centum per annum.'' Laws of New York, 1934, ch. 282 (Public Service Commissions Law, § 18-a).

It will be observed that the only essential differences between this statute and our own are: (1) The New York statute limits the charge that may be made against the corporation to one-half of one per cent of its operating revenues; our statute limits the charge to the reasonable cost of the services performed. (2) Our statute specifically provides for collection by a civil action; the New York statute does not. Since the majority hold that the absence of a limitation (such as one-half of one per cent of operating revenues) does not render the act unconstitutional, I venture the assertion that, in all essential respects, the New York statute is identical with ours. It is, therefore, of more than passing interest to know what the New York court of appeals thinks about it. In *Bronx Gas and Electric Co. v. Maltbie, supra,* that court says:

"'The full power of investigation to determine reasonable rates, either upon complaint or upon its own motion, rests with the Commission. The only subject dealt with by these additions of the Laws of 1934 relates to the costs and expenses of conducting such investigation. The Public Service Commission is not obliged to show in the first instance to any court the grounds or the reasons for its investigation. The duty rests upon it to make the investigation upon complaint or upon its own motion when it, and not the courts, deems it necessary. The purpose and the regulatory powers of the Commission would be nullified were it obliged in the first instance to show necessity for examination or investigation. The Legislature has given to the Commission, and not to the courts, the right to determine these matters.

"The determination of the question, viz.: should an investigation be made, rests solely in the discretion of the Commission, and in its exercise of this discretion the courts may not interfere. *Martin v. Mott* (12 Wheat. 19, 29, 33); *Philadelphia & Trenton R. R. Co. v. Stimpson* (14 Pet. 448, 458).

"Neither is there any discretion given to the courts to determine when or how the expenses shall be charged to the investigated corporation. Section 18-a distinctly states that whenever the Public Service Commission shall deem it necessary to investigate the rates of any public utility, such public utility shall be charged with and pay such portion of the compensation and expenses of the Commission as is reasonably attributable to such investigation. The respondents and the courts below have read this section as though the expenses can only be charged to the utility when the investigation appears to be necessary, and that, to establish such necessity, the Commission, after a hearing, must make findings of fact based upon evidence showing such necessity. This statute will bear no such interpretation. The previous law has not been modified: the Commission may investigate whenever it shall deem necessary; the public utility shall be charged with the reasonable expenses. The hearing provided for in Section 18-a is on the cost and expenses, not on the necessity for the examination.

This is the way the section reads; this is the interpretation we must give it. To hold otherwise cripples the whole proceeding and renders the Commission almost powerless. The words, 'provided an opportunity to be heard thereon shall first have been granted to such public utility' apply to the preceding clause, 'such portion of the compensation and expenses of the commission, its officers, agents and employees, including employees temporarily employed, as is reasonably attributable to such investigation, valuation or revaluation.' . . . .

"We therefore hold that the rulings below are erroneous, and that the petitioner is to be charged with the costs and expenses reasonably attributable to this investigation without previous findings of necessity."

Our statute is obviously patterned after the Wisconsin statute. That statute is of especial interest to us, since ours was adopted after that act had been construed by the supreme court of Wisconsin. For it is an elementary rule of statutory construction that a statute taken from a sister state is adopted with the construction placed upon it by the court of last resort of such state. *In re Westlake Avenue*, 40 Wash. 144, 82 Pac. 279; *Bickford v. Eschbach*, 167 Wash. 357, 9 P. (2d) 376. The Wisconsin statute is as follows:

"196.85. *Payment of Commission's Expenditures by Utilities.* (1) Whenever the commission in a proceeding upon its own motion, or complaint, or upon an application to it shall deem it necessary to investigate the books, accounts, practices and activities of, or make appraisals of the property of any public utility, power district or railroad, or to render any engineering or accounting services to any public utility, power district or railroad, such public utility, power district or railroad shall pay the expenses reasonably attributable to such investigation, appraisal or service; *provided, however, that the commission may exempt and relieve such public utility, power district, or railroad from the duty of paying such expenses, or a portion thereof, but only upon a finding*

*that the public interest requires that such public
utility, power district, or railroad be thus exempted
and relieved, in which event such expenses shall not
be chargeable as a part of the remainder described in
subsection (2) of this section.* The commission shall
ascertain such expenses and render a bill therefor, by
registered mail, to the public utility, power district or
railroad, either at the conclusion of the investigation,
appraisal or services, or from time to time during its
progress. Upon bill so rendered such public utility,
power district or railroad shall, within thirty days
pay to the commission the amount of the special ex-
pense for which it is billed, and such payment when
made shall be credited to the appropriation to the
commission in subsection (4) of section 20.51. . . ."
Laws of Wisconsin, 1931.

I have italicized the proviso, because it is in this
respect only that the statute can be differentiated
from ours. It is to be observed that this proviso ex-
pressly delegates to the public service commission the
power which the majority attributes, by implication,
to ours, and which they hold to be an unlawful dele-
gation of legislative power. In the first place, the
implication that our statute places such power in the
hands of the director is unwarranted. The duty of
the director is in all cases mandatory. Our statute
says:

"The department *shall* ascertain such expenses, and
. . . *shall* render a bill therefor . . ." Laws
of 1933, ch. 165, § 12, p. 610 (Rem. 1934 Sup., § 10458-6
[P. C. § 5527-12]).

I see no room for favoritism or discrimination
under this statute. Surely, if the director has failed
to perform the duties imposed upon him, there is
some remedy other than holding the act unconstitu-
tional.

But, assuming the implication of power attributed
to the statute by the majority, let us see what the su-

preme court of Wisconsin says about the express delegation of such power under their statute. In *Wisconsin Telephone Co. v. Public Service Commission, supra,* it is said:

"Does it not appear from this act that the Legislature has declared what the law shall be? Tersely stated, it declares that the public utilities shall pay the expenses of investigations of their affairs unless in the judgment of the commission public interest requires that they be exempt from such burden. It was not the legislative intent to confer upon the Public Service Commission the arbitrary power which resides in the Legislature itself to determine what constitutes public interest. The Legislature possesses arbitrary power in such matters, and may determine that to be in the public interest which the great majority of the people believe otherwise. When they so determine, there can be no appeal. This is not the kind of power which the Legislature committed to the Public Service Commission. While it may be that what constitutes the public interest is at times somewhat intangible in character, yet the Public Service Commission may pass reasonable judgment upon the facts and circumstances under consideration and come to a reasonable conclusion as to what the public interest requires under the circumstances, and its conclusion is subject to judicial review under the express provisions of the law which makes all determinations of the commission subject to judicial review. Section 196.41, Stats. This falls far short of the arbitrary power which resides in the Legislature itself. The Legislature realizes the impossibility of anticipating and providing for every special situation involved in the question of what the public interest requires, and, instead of attempting the impossible, it gives flexibility and efficiency to the law by providing that the commission shall first exercise its reasonable judgment as to what shall constitute public interest in the multiplicity of circumstances arising and then making its judgment subject to the judicial test of reasonableness, a test which cannot

be applied to the legislative exercise of power, in the same manner at least.''

In face of this decision and that of the court of appeals of New York, in *Bronx Gas and Electric Co. v. Maltbie, supra,* I cannot bring myself to believe that this court is warranted in holding § 12, chapter 165, Laws of 1933, p. 610, unconstitutional. I therefore dissent.

HOLCOMB, J. (dissenting)—Although at first, I was tentatively of the contrary opinion, after a critical comparison of the New York and Wisconsin statutes, and the decisions of their highest courts sustaining them, I am now convinced, by their cogent reasoning, that our statute should be sustained. It delegates nothing but administrative powers such as have long been delegated to the interstate commerce commission and consistently upheld.

I therefore concur in the dissenting opinion of Judge Blake.