In the Matter of the Application of ALBERT C. OLP, as Permanent Trustee of FINGER LAKES LAND Co., INC., Petitioner, against THE TOWN OF BRIGHTON and Others, Respondents.

Supreme Court, Monroe County, April 30, 1940.

*Edward L. Cleary*, for the petitioner.

*Edward M. Ogden*, for the respondents.

LAPHAM, J.    This is an application under article 78 of the Civil Practice Act and section 267 of the Town Law which seeks a review of the determination of the planning board and the zoning and building commission and of the town board of the town of Brighton, N. Y., denying to the petitioner a permit for the operation of a gasoline service station in the town of Brighton.

The petitioner is the permanent trustee of the Finger Lakes Land Co., Inc., in reorganization under section 77B of the National Bankruptcy Act.    Among the assets of the company was a vacant

lot at the northwest corner of Monroe avenue and St. Regis drive in the town of Brighton. This lot lies within a district designated as commercial by the zoning ordinance of the town.

On October 28, 1938, the Colonial Beacon Oil Company made a formal application, with the consent of the petitioner as owner, for a permit for the maintenance of a gasoline service station on this lot. On November 15, 1938, the planning board denied the application on the ground, which it elaborated in detail, that the proposed use of the premises would be detrimental to the health and safety of the community and to its normal and beneficial growth. The petitioner and the Colonial Beacon Oil Company appealed to the town board and on April 12, 1939, the town board affirmed the decision of the planning board. On May twelfth the petitioner obtained an order directing the respondents to make a return of all the proceedings before them on a review of their determinations by this court.

The uses permitted by the zoning ordinance in a commercial district in the town are described in section 33 of the ordinance:

" In the commercial districts, no structure or the premises shall be used and no structure shall be erected or altered which is arranged, intended or designed to be used for other than one or more of the following uses:

" (1) Any use permitted in any class of residential districts.

" (2) Structure wholly devoted to business, or business with living rooms or apartments above, provided the use of such structure is approved by the Planning Board.

" (3) Public garage, provided special application is made to the Planning Board and a permit issued for the operation thereof.'

The application of the Colonial Beacon Oil Company was mad: under section 16 of the ordinance which, so far as is pertinent here, provides: " The Planning Board may on special application issue a temporary permit for a term not to exceed five years for the operation of an airport or the operation of a motor vehicle supply station in a commercial district. The Board may require the applicant to submit to such examination and furnish such information as it may require before acting thereon, and fix the location of structures on the premises in its discretion. The determination of the Board may be reviewed by the Town Board in the first instance without appeal to the Planning Board sitting as a Board of Appeals in the manner provided in the Town Law."

At the threshold we are confronted with the contention of the petitioner that the word " may " in section 16 must be construed as " must," and that in the face of this mandate the planning board had no discretion to withhold a permit from the petitioner after

he had complied with all the conditions prescribed by the ordinance for the granting of a permit. To support his contention, the petitioner summoned the rule that when the act to be performed affects the interests of the public and the rights of third persons, permissive words in a statute conferring power on public officers will be construed as mandatory. (*Vulcan Rail & Const. Co., Inc.,* v. *Westchester County,* 250 App. Div. 212.) But this is only a statutory rule of construction, useful to a limited degree but never to be followed slavishly where blind obedience would do violence to the manifest intention of the statute. (*O'Connor* v. *Bankers Trust Co.,* 159 Misc. 920; affd., 253 App. Div. 714; affd., 278 N. Y. 649.)

To construe "may" as "must" in section 16 would be not only to distort the ordinary meaning of the word but also to nullify the careful plan for community growth and specific provisions embodied in the zoning ordinance. The operation of a gasoline station is not proscribed in terms in a commercial district by section 33 of the ordinance but the section, considered in the context of the provisions relating to all districts, says in all but words that the maintenance of a gasoline service station is a special privilege which requires the intervention and approval of the planning board before it can be indulged. If the issuance of a permit were mandatory, the provisions for a review of the determination of the planning board (§ 16) and for written notice to all occupants or owners of land within 500 feet of the area sought for special use (§ 52) would be meaningless. A zoning ordinance cannot be so easily reduced to impotence or futility.

The pivotal issue in this proceeding is whether the town board as the legislative body of the town has conferred power on the planning board to grant or deny a permit for a gasoline station on the ground that the public health, safety, morals or general welfare will be promoted or obstructed and whether, if such power has been conferred, it is an improper delegation of legislative authority.

The ordinance does not expressly command the planning board to confine itself to a consideration of the health, safety, moral or the general welfare of the community, but such a command pervades the whole ordinance. Section 16, dealing with applications for permits for motor vehicle supply stations, is silent on the policy which the planning board must respect in passing on these applications, but this silence has no judicial significance where voices elsewhere in the ordinance have declared the policy in unmistakable terms. Section 2 of the ordinance defines its scope and repeats verbatim the broad objectives of the enabling act (Town Law, § 261) which is the source of the authority of the town to enact a zoning ordinance. These objectives and concepts are

admittedly and conveniently vague and constantly shifting in content and in meaning but they are the controlling general principles to which administrative officials and agencies intrusted with the practical administration of the ordinance must bow. By them every use of property sanctioned by the ordinance must be weighed and by them every act of an administrative board must be judged. No act of the administrative agency that clashes with the general purpose of the ordinance can survive.

The power conferred on the planning board and on the appellate body of review is not an undefined general power which cannot lawfully be conferred on an administrative body. (*Matter of Small* v. *Moss*, 279 N. Y. 288; *Matter of Lyons* v. *Prince*, 281 id. 557.) If a legislative body vests an administrative agency with power to exercise discretion, it must mark out the limits of that discretion by the formulation of some standard to guide the board or agency. All that these cases require is that some standard shall be established. It need not be specific. A standard may be general and none the less valid if it is capable of a reasonable application. (*Trustees of Village of Saratoga Springs* v. *Saratoga Gas, Electric Light & Power Co.*, 191 N. Y. 123; *Matter of Kings County Lighting Co.* v. *Maltbie*, 244 App. Div. 475; *Matter of Elite Dairy Products, Inc.*, v. *Ten Eyck*, 271 N. Y. 488, 494, 495; *People ex rel. Doscher* v. *Sisson*, 222 id. 387, 397; *People ex rel. Broderick* v. *Goldfogle*, 213 App. Div. 677, 692; *Matter of Berger* v. *Quinn*, 149 Misc. 545.)

Neither the granting of power by the Legislature to a commission to determine what is a reasonable rate (*Trustees of Village of Saratoga Springs* v. *Saratoga Gas, Electric Light & Power Co., supra*) nor to determine what is necessary (*Matter of Kings County Lighting Co.* v. *Maltbie, supra*) is an invalid delegation of legislative authority. The right of the law-making branch of government to delegate to some other agency the power to determine facts and conditions on which the operation or suspension of a statute depends has long been upheld. (*People ex rel. Doscher* v. *Sisson, supra.*) In the *Doscher* case the court considered objections to chapter 521 of the Laws of 1917 which provided in part that " The excise commissioner, with the approval of the Governor, whenever in his opinion the public peace, safety and good order may require, * * * may, during the present war, suspend the privileges under liquor tax certificates heretofore or hereafter issued." In holding that the public safety, peace and order were sufficient standards to guide the action of the commissioner, the court said (p. 397): " The Legislature may validly appoint an executive agency to examine into and determine whether or not the facts existing warrant, as provided by the Legislature, the operation or a suspension of the operation of a statute.

The Legislature, in the instant case, enacted on the subject as far as was reasonably practicable, and from the necessities of the case was compelled to leave to an executive agency the duty of bringing about the result it desired. The enumerated places and the proximities to them were not permanent. They might cease or arise. Conditions in the proximities differed and new conditions might arise. The legislative purpose of securing the public safety and interest, through suspension of selling, could be best accomplished by an executive agency. The power to suspend was not legislative and was executive. The statement of Judge Ranney through clarity, accuracy and frequent citation has become classic: ' The true distinction is between the delegation of the power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made.' "

The discretion of the planning board was not untrammeled under this ordinance. It was to be exercised in the promotion of the public health, safety, morals or general welfare and in obedience to the rule of reason. Ample safeguards for its application were provided by ordinance and by statute in the form of a review of the decision of the planning board. A public hearing on any appeal from such a decision and a review by a court of record under section 267 of the Town Law would catch any vagary and confine a vagrant discretion to its proper channels.

A general standard in the application of the provisions of the zoning ordinance is sanctioned by more than persuasuve analogies. Section 261 of the Town Law expressly provides that a board of appeals may determine and vary the application of the regulations of an ordinance " in harmony with their general purpose and intent, and *in accordance with general or specific rules* therein contained." (Italics supplied.)

The petitioner seeks vainly to draw strength from *Matter of Small* v. *Moss (supra)* and from the other cases stemming from it. These cases have no application here because in each of them the administrative official whose acts were being assailed had attempted to exercise a power which the statute did not confer upon him. Here, on the other hand, the power lay behind the integrated provisions of the ordinance.

The petitioner cannot in any event urge the absence of any formulated standards as fatal to the decision denying him a permit for the final approval or disapproval of the application lay in the hands of the town board. The ordinance, in prescribing a method of review of the decision of the planning board, gave to an aggrieved

party the choice of appealing to the planning board sitting as a board of appeals (§ 50, as amd. by Ordinance adopted Aug. 26, 1935), of appealing to the town board from a determination of the planning board (§ 53), or of seeking a review by the town board in the first instance without appeal to the planning board (§ 16). No appeal was taken to the planning board in accordance with section 53 of the ordinance, but the petitioner chose a review by the town board. Under these circumstances, the power of the town board to approve or disapprove the proposed use of the petitioner's property was plenary and no standard was required for the exercise of its discretion. (*Green Point Savings Bank* v. *Board of Zoning Appeals*, 281 N. Y. 534.) Whether the town board sat as a board of appeals or merely as the town board in its review of the denial of the petitioner's application by the planning board has no decisive significance. The vital fact remains that the town board was the legislative body of the town government whose power over the regulation of the use of property in the town was unconfined and plenary. It could not shed its legislative for an administrative capacity and subject itself to a restraint which it did not acknowledge or recognize as a legislative body. There can be no restraint in a legal sense when the power to act without it is undisputed. Indeed, the provisions of the ordinance conferring the right of review on the town board may have been intended to obviate the very objections concerning the absence of a definite standard which the petitioner is now advancing.

The decisions of the planning board and of the town board are beyond the reach of successful challenge as arbitrary. The courts will not intrude upon the area of action marked out for an administrative body unless its decision was arbitrary or had no substantial relation to the public safety or the general welfare. (*People ex rel. Sullivan* v. *McLaughlin*, 266 N. Y. 519; *People ex rel. St. Albans-Springfield Corp.* v. *Connell*, 257 id. 73.)

Whatever doubt the court may entertain as to the wisdom or correctness of the decisions of the planning and town boards, I cannot say that they were arbitrary or unreasonable. While some commercial stores lie to the west of petitioner's property, it is largely surrounded by homes, apartment houses and lots plotted for residential use. It lies in a heavily-populated part of the town on a heavily-traveled thoroughfare. The hazard to traffic and the peril from inflammable materials on the premises are obvious. The impact on residential property values, the danger to pedestrians and school children in the vicinity, the protests from property owners immediately adjacent to the petitioner's property, and the relation of the contemplated use of the petitioner's property to a

well-considered plan of community growth embodied in the ordinance were all relevant circumstances which the board could properly assess and weigh. Whether the planning board gave any consideration to circumstances beyond its power to consider it is impossible to say. If it did venture beyond its province, it did not go so far that this court can say that its decision was based on grounds it could not legally consider.

The application for an order annulling the determination of the planning board and of the town board is denied, without costs.

Let order enter accordingly.